DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Thomas Becker, appeals from the judgment of the Summit County Court of Common Pleas granting summary judgment in favor of Appellee, Goodyear Tire Rubber Co. ("Goodyear"). This Court affirms.
 I. {¶ 2} In March 2003, Appellant entered into an employment contract with Goodyear. Appellant was hired as a marketing manager after negotiating the terms of his employment. Pertinent to this appeal, included in his employment contract was a provision that granted Appellant severance benefits unless he was fired for gross misconduct or cause.
 {¶ 3} When he was initially hired, Appellant's direct supervisor was Donn Kramer and his work was indirectly supervised by Mike Kitz. Appellant admitted that his relationship with Mr. Kramer was strained and that he felt Mr. Kramer often undermined his decisions. In January 2004, however, both Mr. Kitz and Mr. Kramer were transferred and Appellant's supervisor became Sanjay Sivanandan. Shortly after Mr. Sivanandan arrived, reports started to surface regarding Appellant's conduct.
 {¶ 4} On January 9, 2004, Chris Grindem, a Director of Marketing Services at Goodyear, contacted a supervisor in Human Resources, Mr. Kim Whiteman. Mr. Grindem informed Mr. Whiteman that Appellant had berated his (Mr. Grindem's) secretary to the point that she was left shaking and in tears. Thereafter, Mr. Whiteman initiated an investigation into Appellant's conduct, contacting numerous Goodyear employees and individuals who performed services on behalf of Goodyear. As a result of the information gathered during the investigation, Appellant was terminated from his position at Goodyear on January 30, 2004.
 {¶ 5} On September 7, 2004, Appellant filed suit alleging breach of implied and express contract, asserting that he was entitled to severance benefits. Goodyear responded to the complaint, asserting that Appellant was fired for cause. Following discovery, both parties moved for summary judgment. The trial court determined that Appellant had not demonstrated a genuine issue of material fact and granted judgment in favor of Goodyear. Appellant timely appealed, raising one assignment of error for review.
 II. ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF GOODYEAR AND AGAINST [APPELLANT] ON [APPELLANT'S] CONTRACT CLAIM FOR SEVERANCE BENEFITS. * * *"
 {¶ 6} In his sole assignment of error, Appellant contends that the trial court erred in granting summary judgment. Specifically, Appellant asserts that Goodyear breached its duty of good faith and fair dealing when it determined that his termination was for cause. This Court disagrees.
 {¶ 7} This Court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party.Viock v. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12.
 {¶ 8} Pursuant to Civil Rule 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 9} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996),75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 10} In support of its motion for summary judgment, Goodyear relied upon the affidavits of numerous individuals who worked with Appellant at Goodyear or dealt with him as business associates of Goodyear. In addition, Goodyear relied upon the written correspondence between the parties prior to Appellant's acceptance of his position and relied on its policy manuals.
 {¶ 11} In response, Appellant attacked the evidentiary value of Goodyear's evidence and relied heavily upon his own affidavit and deposition in which he denied many of the allegations against him. Ultimately, the trial court found that Appellant had failed to demonstrate a genuine issue of material fact.
Result Oriented Investigation
 {¶ 12} Appellant asserts that Goodyear breached its duty of good faith and fair dealing. Specifically, Appellant asserts that Goodyear breached its duty "by conducting a secret, result-driven investigation" which led to Appellant's termination. This Court disagrees.
 {¶ 13} We have previously recognized that "[p]arties to an employment contract are bound towards one another by standards of good faith and fair dealing." Conrad v. Wooster Community Hosp.
(Oct. 24, 1990), 9th Dist. No. 2553, at *3.
"As stated by the Restatement Second of Contracts, `Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.' It also states that bad faith may consist of inaction, or may be the `abuse of a power to specify terms, [or] interference with or failure to cooperate in the other party's performance.'
"* * * [The agreement] has an implied covenant of good faith and fair dealing that requires not only honesty but also reasonableness in the enforcement of the contract." (Citations omitted.) Littlejohn v. Parrish, 1st Dist. No. C-040720,2005-Ohio-4850, at ¶ 26-27.
In its motion for summary judgment, this Court finds that Goodyear met its initial Dresher burden through the submission of its evidence.
 {¶ 14} In support of its contention that it performed a full and fair investigation of Appellant prior to his discharge, Goodyear attached the affidavits and depositions of nearly a dozen individuals who were contacted about Appellant's behavior. One theme remained consistent throughout these statements: employees of Goodyear and their business associates characterized Appellant's behavior as rude and argumentative.
 {¶ 15} In response to this investigation, Appellant denied that some of the altercations had taken place, indicated that he had apologized for some his actions, and claimed that the alleged opinions of these individuals were tainted because each disliked him. This Court finds that Appellant did not meet his reciprocalDresher burden to demonstrate that a genuine issue of material fact existed with regard to his claim that Goodyear violated its duty of good faith and fair dealing.
 {¶ 16} First, there is no evidence in the record to support Appellant's assertion that Goodyear's investigation was result oriented. To the contrary, the evidence indicates that Mr. Grindem contacted Mr. Whiteman when he found his secretary crying after an altercation with Appellant. After interviewing both Mr. Grindem and his secretary, Mr. Whiteman asked if there was anyone else he should speak with regarding Appellant's behavior. Mr. Whiteman continued this trend throughout his investigation and compiled an extensive list of individuals who had difficulty dealing with Appellant.
 {¶ 17} Further, there is no support in the record for Appellant's assertions that every individual Mr. Whiteman interviewed was biased and disliked Appellant. Mr. Whiteman interviewed a broad range of individuals, including co-workers and employees of businesses who conducted business with Appellant. Each stated with specificity why he or she had problems dealing with Appellant on a routine basis. Accordingly, construing the evidence in a light most favorable to Appellant, no reasonable jury could conclude that Goodyear's investigation violated its duty of good faith.
For Cause
 {¶ 18} Directly tied to Appellant's allegation that Goodyear violated its duty of good faith is Appellant's assertion that he was not fired for cause. Appellant alleges that such a finding cannot be made through summary judgment because he disputes the proper definition of "cause" and there is no evidence to support Goodyear's finding of cause for his termination. We find that both of Appellant's contentions lack merit.
 {¶ 19} Appellant first asserts that no determination can be made through summary judgment because he disputes the definition of cause. The offer letter Appellant accepted contained the following provision:
"In the event your employment is terminated by the Company other than for gross misconduct or cause, you will be entitled to [severance benefits]."
In support of his position, Appellant asserts that he understood the above provision to mean that he would only be terminated following progressive discipline and that he would only be terminated for events that were within his control.
 {¶ 20} We begin by noting that Appellant has not identified a specific conversation or document which discussed Goodyear's use of progressive discipline. In fact, Appellant failed to identify any provision or conversation from his initial dealings with Goodyear that even discussed a discipline structure. However, upon starting his employment, Appellant was subject to Goodyear's written discipline policy which states as follows:
"Associates are also subject to discharge when they fail to perform their job responsibilities satisfactorily for reasons the Company believes to be within the associate's control[.] * * * These situations will generally be addressed by counseling and progressive discipline prior to discharge." (Emphasis added.)
Further, Appellant signed an employment status statement which read as follows:
"I am voluntarily seeking employment with Goodyear and I understand I am free to resign. Similarly, the Goodyear Tire 
Rubber Company is free to conclude my employment at anytime withor without cause." (Emphasis added.)
Accordingly, from the evidence submitted, no reasonable person could conclude that Goodyear was required to offer Appellant progressive discipline before his termination for cause.
 {¶ 21} Appellant also argues that he understood "cause" to mean that he would be terminated only for things within his control. When the terms in a contract are unambiguous, this Court will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241,246. Here, as noted in Goodyear's discipline policy, Appellant was subject to discharge for failing to satisfactorily perform job functions which were within his control. Appellant, however, has failed to demonstrate that Goodyear or the trial court considered any actions that were outside his control. Rather, the uncontroverted evidence demonstrates that Appellant's termination was based solely upon his own behavior.
 {¶ 22} The Ohio Supreme Court has noted that to fire an employee for cause, the employer must demonstrate that the employee's actions have a "natural tendency" to injure the employer's business. Beckman v. Garrett (1902),66 Ohio St. 136, at syllabus. Such a definition aligns directly with Appellant's alleged understanding that he would only be terminated for matters within his control and with Goodyear's discipline policy discussing an employee's failure to perform his job satisfactorily. Accordingly, Appellant's challenge to the definition of "cause" lacks merit.
 {¶ 23} Finally, Appellant asserts that summary judgment is inappropriate because he disputed many of the allegations relied upon by Goodyear. This Court finds that such an argument lacks merit.
 {¶ 24} We begin by noting that Appellant could not dispute many of the statements made in support of Goodyear's decision to terminate him and did not dispute each of the allegations. Many of the individuals swore in their affidavits that they perceived Appellant to be rude and argumentative. Logically, Appellant cannot dispute how another individual perceived him. Further, Appellant admitted to some altercations, even apologizing for his conduct in one instance.
 {¶ 25} Our analysis is guided by the "reasonable grounds" test set forth in Hills v. Cleveland Clinic Found. (July 9, 1987), 8th Dist. No. 52293, at *5. Having determined throughout this opinion that Goodyear acted in good faith, the issue we must determine is whether Appellant's discharge was made on the basis of substantial evidence. Id. Such a view has also been espoused by the U.S. Supreme Court. In rejecting the position that an employer must prove that an employee actually committed the alleged acts for which they were discharged, the Court noted as follows:
"We think employer decision making will not be unduly burdened by having courts look to the facts as the employer reasonably found them to be. It may unreasonable, for example, for the employer to come to a conclusion based on no evidence at all. Likewise, it may be unreasonable for an employer to act based on extremely weak evidence when strong evidence is clearly available[.]" Waters v. Churchill (1994), 511 U.S. 661, 677.
Similarly, the Southern District of Ohio has adopted such a "reasonable grounds" standard. Chrvala v. Borden, Inc.
(S.D.Ohio 1998), 14 F.Supp.2d 1013, 1017-18.
 {¶ 26} Accordingly, we proceed to determine whether Goodyear had reasonable grounds to terminate Appellant. Mr. Whiteman began his investigation following a report from Mr. Grindem that Appellant had caused his secretary emotional distress. Following each interview that he conducted, Mr. Whiteman asked the individual whether there was anyone else he should speak with prior to making a decision. As a result, Mr. Whiteman gathered statements from numerous individuals.[1]
 {¶ 27} Those statements include the following. In her affidavit, Bonnie Castro, the Director of Executive Leadership Sourcing and Succession at Goodyear, stated that Tisha Strakusek informed her that Appellant "gave her a really hard time, and was arrogant, rude, and nasty." Ms. Strakusek, an employee for a Goodyear supplier, verified the information in Ms. Castro's affidavit, stating as follows:
"[Appellant] was very difficult to deal with. He was arrogant and rude. He was also evasive and uncooperative. * * * He became belligerent with me, demanding that I ship the items and arrogantly asked me who my boss was."
Susan Gaudet, the Manager of the Tire Marketing Administration at Goodyear, swore that Appellant was "degrading and difficult to deal with" and that she felt he was "out of control and very obstinate[.]" Mr. Grindem swore in his affidavit as follows:
"On January 9, 2004, my secretary, Mary McCoy (now McKee), came into my office shaking and near tears. [Appellant asked to speak with me and Ms. McCoy indicated that I could not be disturbed.] * * * [Appellant] kept demanding that she interrupt me which she declined to do. She was extremely upset and said she had never been treated so badly by anyone at Goodyear before." Mr. Grindem further stated that Appellant had been "verbally abusive to me personally."
 {¶ 28} Goodyear's evidence also included the following. Carl Payntor, an employee in Goodyear's legal department, noted that Appellant was rude and that he "did not like to talk to him and avoided doing so, dealing with him by e-mail if possible." Finally, Melissa Vazsonyi, an employee of the company which handled travel arrangements for Goodyear, swore as follows in her affidavit:
"[Appellant] was rude, argumentative, and condescending with our agents, he would get angry and challenge them about Goodyear's policies, [and] he would ignore Goodyear policies[.] * * * We instituted a special handling procedure for calls with [Appellant] because he was so difficult and sometimes would misrepresent what had been stated in earlier conversations."
 {¶ 29} In response to these affidavits, Appellant asserted that the complaints were either inconsequential or unfounded. We disagree with Appellant's characterization.
 {¶ 30} Unquestionably, the evidence that was uncovered during Goodyear's investigation demonstrated that Appellant was acting in a manner that would have a natural tendency to injure Goodyear. Beckman, 66 Ohio St. at syllabus. The affidavits and depositions of the individuals that dealt with Appellant evinced a pattern of disrespectful behavior. Suppliers instituted special policies just to deal with Appellant. An employee was reduced to tears after being berated. Further, there is no indication that Goodyear's investigation was limited. To the contrary, the investigation included individuals who worked directly with Appellant, individuals who only occasionally had to interact with him, and employees from other businesses who contracted with Goodyear. As Goodyear performed a thorough investigation which resulted in substantial evidence to support its decision to terminate Appellant, we find no error in the trial court's grant of summary judgment despite Appellant's denials. Waters,511 U.S. at 677-78.
Ulterior Motive
 {¶ 31} Appellant asserts that Goodyear labeled his firing "for cause" to avoid paying him severance. Effectively, Appellant has urged that Goodyear was required to label his termination "for cause" in order to effectuate their underlying purpose, denying him severance benefits. As noted above, Goodyear set forth substantial evidence in support of its decision to terminate Appellant for cause. There is no direct evidence in the record, however, to support Appellant's claim that his termination was financially motivated by a desire to deny him severance benefits. Instead, Appellant claims that he submitted sufficient evidence from which the inference could be drawn that his termination was financially motivated. We disagree.
 {¶ 32} In support of his argument, Appellant relies upon the timing of his termination. Specifically, Appellant asserts that the investigation into his behavior began shortly after Mr. Sivanandan became his manager and that Mr. Sivanandan replaced Appellant with two individuals "whom [he] knew and liked." This Court finds that the evidence submitted by Appellant does not lead to the inferences he has suggested.
 {¶ 33} Above, we found that Goodyear conducted an investigation in full compliance with its duty of good faith and fair dealing. That investigation resulted in substantial evidence that Appellant's behavior was inconsistent with the position he had in the company. None of the evidence submitted by Appellant supports the inference that Goodyear was financially motivated. As previously noted, the investigation into Appellant's behavior began after Mr. Grindem found his secretary crying after an altercation with Appellant. The fact that such an event corresponded with Mr. Sivanandan's new position creates no inference of impropriety. Accordingly, the trial court did not err in its grant of summary judgment. Appellant's sole assignment of error is overruled.
 III. {¶ 34} Appellant's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Whitmore, P.J., Boyle, J., concur.
[1] We note that Appellant challenged the admissibility of many of these statements in the trial court. Appellant has not renewed that challenge on appeal.