DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Elite Designer Homes, Inc., appeals the judgment of the Summit County Court of Common Pleas, which granted summary judgment in favor of appellees, Landmark Partners, Landmark 2 Limited Liability Co., Landogs LLC, and North Fork Development LLC. This Court affirms, in part, and reverses, in part.
 I. {¶ 2} Appellant is a corporation which builds residential properties for resale. Appellee North Fork Development LLC ("North Fork") develops and sells residential sublots to builders such as appellant. Appellees Landmark Partners and Landmark 2 Limited Liability Company ("Landmark") are the owners of certain oil and gas leases relating to certain property owned by North Fork. Landogs LLC ("Landogs") engages in oil and gas drilling.[1]
 {¶ 3} During his life, Raymond Firestone owned property on which he drilled a number of oil and gas wells. Upon his death in 1995, Firestone gifted the property to the Ohio State University, reserving all mineral rights. The reserved mineral rights subsequently came under the ownership of Landmark, companies under the control of Firestone heirs. The Ohio State University sold its interest in the Firestone property to a developer who in turn sold various portions of it to individuals and entities. North Fork bought some of that property for development.
 {¶ 4} Disputes arose regarding Landmark's mineral rights and litigation ensued. In one case, Bath Township attempted to prevent Landmark from drilling additional oil and gas wells on property that Firestone had gifted by deed upon his death. In 2000, this Court held Firestone's deed effectively reserved the right to the grantor, and to Landmark as Firestone's successor in interest, to the entire oil and gas estate of the properties deeded to the Ohio State University. Bath Twp. v. Raymond C.Firestone Co. (2000), 140 Ohio App.3d 252, 259. On February 9, 2001, Landmark and North Fork entered into a settlement agreement in which the parties agreed that Landmark could drill a specified number of new oil and gas wells at certain locations on property owned by North Fork in a certain residential subdivision called "Firestone Trace." The agreement provided that certain wells, specifically wells known as 6B, 7B, 1C and 3C, could be drilled directionally at North Fork's option. For straight drilling purposes, well 7B was located on lot 90 in Firestone Trace, next to lot 89. In addition, Landmark must have commenced drilling within three years of the date of the agreement, or it would lose the right to drill such wells. The parties publicly recorded their agreement.
 {¶ 5} In the summer of 2003, North Fork was to host the Parade of Homes. Appellant purchased some land in Firestone Trace from North Fork and built a "spec home" on lot 111. Although appellant's spec home was completed by June 2003, the Parade of Homes was delayed until August 2003 to accommodate other builders who wanted to enter homes in the parade. Appellant also had contracts to purchase other lots from North Fork, including lot 89, at issue in this appeal. Appellant, however, never followed through on its contract to purchase lot 89.
 {¶ 6} By the summer of 2003, a house had been built on lot 90 of Firestone Trace. Landmark, out of concern for the preservation of its drilling rights, placed survey stakes and signs on locations within Firestone Trace, where it believed it had the right to drill. Landmark placed such stakes and signs on lot 89. Landmark was generally concerned that prospective property buyers within Firestone Trace were not being advised of Landmark's mineral and concomitant drilling rights pursuant to the 2001 settlement agreement.
 {¶ 7} On July 31, 2003, North Fork filed a complaint against Landmark, Landogs, and Oil Gas Solutions, Ltd. for breach of contract and tortious interference with business relations, seeking specific performance and declaratory relief. See NorthFork Dev. LLC v. Landmark Partners, et al., Summit County Court of Common Pleas No. CV2003-07-4446. The same day, North Fork obtained a temporary restraining order against the defendants, restraining them from further activities in furtherance of drilling wells on all North Fork premises and ordering them to remove all signs posted on North Fork property.
 {¶ 8} On August 1, 2003, Landmark filed counterclaims, naming appellant and KNL Custom Homes, Inc. as new-party counterclaim-defendants, because North Fork had conveyed surface property rights to those entities. The same day, Landmark obtained a temporary restraining order against the parties, including appellant, restraining them from further construction on certain Firestone Trace lots, including lot 89. On August 7, 2003, the plaintiff and defendants dismissed all claims and counterclaims with prejudice. In addition, Landmark dismissed the third-party claims against appellant and KNL Custom Homes, Inc. without prejudice.
 {¶ 9} On January 20, 2004, appellant filed a complaint in the instant matter against Landmark, Landogs, North Fork Development LLC and Oil Gas Solutions Ltd.[2] Appellant alleged eleven causes of actions, to wit: trespass, business interference, slander of title, abuse of civil process, malicious prosecution and negligence as against all appellees; breach of contract, failure to negotiate and execute a contract in good faith and fraud/misrepresentation as against North Fork; and conspiracy and willful and gross negligence as against Landmark and Landogs. Appellees entered general denials to any liability.
 {¶ 10} On June 24, 2005, North Fork and Landmark filed separate motions for summary judgment. On July 1, 2005, Landogs filed its motion for summary judgment. On July 14, 2005, appellant filed a request for additional time to file responsive briefs and evidence in opposition to the motions for summary judgment. The trial court extended appellant's response time until August 25, 2005. On August 24, 2005, appellant again moved for additional time to file responses to the motions for summary judgment due to counsel's illness and to allow time to secure alternate representation for appellant. The trial court again granted the request and ordered that appellant's response in opposition to the motions for summary judgment be filed by September 25, 2005. On September 23, 2005, appellant filed a third motion for additional time to respond to the motions for summary judgment. Before the trial court had an opportunity to rule on the motion, on September 26, 2005, appellant filed a memorandum in opposition to the motions for summary judgment, attaching evidentiary materials. On October 3, 2005, appellees filed a joint motion in opposition to appellant's third motion for extension of time to respond to the motions for summary judgment. The trial court denied appellant's third motion for additional time to fully respond to the motions for summary judgment.
 {¶ 11} On October 17, 2005, the trial court issued a 52-page judgment entry, granting summary judgment in full to North Fork, Landmark and Landogs. Appellant timely appeals, setting forth four assignments of error for review.
 II. ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED WHEN IT FAILED TO SCHEDULE A HEARING DATE FOR THE MOTIONS FOR SUMMARY JUDGMENT IN VIOLATION OF CIVIL RULE 56(C)."
 {¶ 12} Appellant argues that the trial court erred by failing to schedule a hearing date to address the motions for summary judgment. This Court disagrees.
 {¶ 13} The Ohio Supreme Court has held that
"[a] trial court need not notify the parties of the date of consideration of a motion for summary judgment or the deadlines for submitting briefs and Civ.R. 56 materials if a local rule of court provides sufficient notice of the hearing date or submission deadlines." Hooten v. Safe Auto Ins. Co.,100 Ohio St.3d 8, 2003-Ohio-4829, syllabus.
 {¶ 14} This Court further recently addressed the issue, holding that "Civ.R. 56(C) and the local practice rules do not require that the trial court hold a hearing on a motion for summary judgment." Vinylux Prod., Inc. v. Commercial FinancialGroup, 9th Dist. No. 22553, 2005-Ohio-4801, at ¶ 13. Specifically, S.C.C.R. 7.14(B) provides that the trial court, in its sole discretion, may grant an oral argument on any motion. S.C.C.R. 7.14(C)(1) sets out the time frame in which a party opposing a motion for summary judgment may file a brief in opposition, as well as the time in which the movant may file a reply brief in support of the motion. Significantly, S.C.C.R. 7.14(C)(2) provides:
"Unless otherwise ordered by the Court, motions for summary judgment shall be heard on briefs and accompanying evidentiary materials (as permitted by Civil Rule 56(C)) without oral argument."
 {¶ 15} In this case, no party requested a hearing on the motions for summary judgment. Furthermore, in compliance with S.C.C.R. 7.14(C)(2), the trial court appropriately heard the motions on the briefs of the parties, after granting two extensions of time in which appellant could file its brief in opposition. Under the circumstances, this Court finds that the trial court did not err by failing to schedule a hearing prior to ruling on appellees' motions for summary judgment. Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"THE TRIAL COURT ERRED WHEN IT FAILED TO PERMIT AN EXTENSION OF TIME TO PLAINTIFF, ELITE DESIGNER HOMES, INC., TO REPLACE ITS ILL COUNSEL AND PERMIT A 30-DAY EXTENSION TO NEW COUNSEL TO ADEQUATELY PREPARE AND IDENTIFY ALL THE EVIDENCE IN THIS CASE WHICH RELATE[S] TO THE GENUINE FACTS THAT PROHIBIT SUMMARY JUDGMENT IN THIS CASE * * *."
 {¶ 16} Appellant argues that the trial court erred by failing to grant a third 30-day extension of time in which appellant could file its brief in opposition to appellees' motions for summary judgment. This Court disagrees.
 {¶ 17} In appellant's first request for additional time to file a response in opposition to the motions for summary judgment, appellant asserted that an additional thirty days was necessary to allow counsel to adequately address the "three complex [m]otions" filed by appellees. The trial court granted appellant's request.
 {¶ 18} In appellant's second motion for additional time, appellant requested an additional thirty days to respond to the motions for summary judgment for the reasons that counsel was 79 years old and had developed certain medical problems, that counsel had to relocate his office and obtain necessary support services, and because counsel was in the process of obtaining new counsel for the case and that such counsel would require additional time to obtain the necessary affidavits in opposition to the motions. The trial court granted appellant's second request.
 {¶ 19} In appellant's third motion for additional time to respond to the motions for summary judgment, counsel reiterated that his medical condition had not improved, that counsel could no longer physically handle a litigation practice due to his health issues, and that his office support services had just been activated. In addition, counsel asserted that another attorney had given a "qualified okay" to enter an appearance in the case on behalf of appellant provided that new counsel would have an additional thirty days in which to review the discovery materials and prepare the appropriate evidentiary affidavits in opposition to the motions for summary judgment. Notwithstanding appellant's third motion for additional time to file its opposition, appellant filed a memorandum in opposition, an affidavit, a transcript and certain other evidentiary materials three days later. In its opposition, appellant requested that new counsel be permitted to file another memorandum in opposition to the motions for summary judgment in thirty days. Appellees jointly opposed this request, and the trial court denied appellant's third motion for additional time.
 {¶ 20} This Court finds that the trial court did not err by denying appellant's request for additional time to allow purported new counsel the opportunity to file a second brief in opposition to the motions for summary judgment. Pursuant to S.C.C.R. 7.14(C)(1):
"A party opposing a motion for summary judgment made pursuant to Civil Rule 56 may file a brief in opposition with accompanying evidentiary materials * * * within fourteen (14) days of service of the motion. The movant may file a reply brief in support of the motion within ten (10) days of service of the brief in opposition. * * * Additional reply briefs may only be filed with leave of the Court only upon a showing of good cause."
 {¶ 21} Here, appellant filed its brief in opposition. The Summit County Rules do not provide for the party opposing the motion for summary judgment to file multiple briefs in opposition. Moreover, appellant did not request that it be permitted to file an additional reply brief to any reply briefs which appellees might speculatively file. Under the circumstances, the trial court did not err by denying appellant's third motion for additional time to file what would amount to a second brief in opposition to the motions for summary judgment. Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III
"THE TRIAL COURT ERRED IN GRANTING THE SUMMARY JUDGMENT MOTION OF NON-ENTITY DEFENDANT, LANDMARK PARTNERS, IN THAT NO SUCH ENTITY EXISTS."
 {¶ 22} Appellant argues that the trial court erred in granting summary judgment in favor of Landmark Partners, thereby dismissing all claims against Landmark Partners; because such entity does not exist. This Court disagrees.
 {¶ 23} Appellant asserts that Landmark Partners ceased to exist by operation of law in 1991 and that counsel for Landmark Partners was unable to establish that the entity is licensed to do business in Ohio. Appellant's sole argument is that "[a] lawyer cannot be permitted to file litigations and to file pleadings on behalf of a non-existent entity." Assuming arguendo that Landmark Partners does not exist as an entity which may sue or be sued, it is appellant who initiated this litigation against Landmark Partners and, by appellant's own argument, cannot be permitted to pursue such litigation. If the entity does not exist, then appellant has no chance of recovery against it. Accordingly, any decision which dismisses all claims against a non-entity only promotes judicial economy and serves the legitimate purpose of foreclosing the possibility of an unobtainable judgment. Appellant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV
"THE TRIAL COURT ERRED IN AWARDING SUMMARY JUDGMENT TO LANDMARK PARTNERS, LANDMARK 2 LIMITED LIABILITY CO., LANDOGS LLC AND NORTH FORK DEVELOPMENT LLC."
 {¶ 24} Appellant argues that the trial court erred by granting summary judgment on appellee's complaint in favor of appellees. This Court disagrees, in part, and agrees, in part.
 {¶ 25} This Court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12.
 {¶ 26} Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated;
(2) the moving party is entitled to judgment as a matter of law; and
(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v.Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 27} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. State ex rel. Zimmerman v.Tompkins (1996), 75 Ohio St.3d 447, 449.
Trespass
 {¶ 28} To prevail on a claim of trespass, appellant will have to prove an unauthorized intentional act of entry by appellees upon land in appellant's possession. Baker v. Fish (Dec. 6, 2000), 9th Dist. No. 19912. Because a trespass action is designed to protect one's interest in exclusive possession of real estate, the claimant must establish a possessory interest in the premises at time of the trespass. Kay Homes, Inc. v. South (Nov. 18, 1994), 11th Dist. No. 93-L-182. That possessory interest may be either actual or constructive. Id., citing Craig Wrecking Co. v.S.G. Loewendick Sons, Inc. (1987), 38 Ohio App.3d 79, paragraph one of the syllabus; 88 Ohio Jurisprudence 3d (1989) 598, Trespass, Section 24. Where the claimant does not have actual possession of the premises, legal title to the real estate generally constitutes constructive possession sufficient to support an action in trespass. Kay Homes, Inc., supra, citingRowland v. Rowland (1837), 8 Ohio 40, 42. However, one who holds merely an executory contract to purchase property has an equitable interest in the property, which interest does not constitute constructive possession for purposes of trespass, unless the contract to purchase affords the right to immediate possession. Kay Homes, Inc., supra, citing 75 American Jurisprudence 2d (1974) 28, Trespass, Section 27; Prosser 
Keaton on Torts (5 Ed. 1984) at 78, fn.3.
 {¶ 29} Appellant alleges that Landmark and Landogs trespassed on lot 89 by placing stakes and signs regarding gas and oil wells on the property and by filing a false application to obtain a drilling permit. Appellant alleges that North Fork contributed to the trespass by selling lot 90, adjacent to lot 89, to another builder, knowing that that builder would build upon lot 90 and presumably cause Landmark and Landogs to place drilling notification signs and stakes upon lot 89.
 {¶ 30} In this case, Mark Michaels, president of Elite Designer Homes, Inc., testified during deposition that appellant had a contract with North Fork to purchase lot 89 but that it never paid for the lot or acquired the deed to the property. Clause 6 of the contract to purchase stated: "Seller shall deliver possession of the lot to Buyer upon recording of the Deed." Here, appellant held an executory purchase contract which expressly conditioned possession upon the recording of the deed. Because appellant never completed the contract to purchase lot 89, the deed was never recorded and possession did not pass to appellant. Accordingly, because appellant has failed to show that it had either actual or constructive possession of lot 89 at the time of the asserted trespass, the action in trespass against appellees does not lie. Therefore, the trial court did not err by granting summary judgment in favor of appellees on appellant's claim alleging trespass.
Business Interference
 {¶ 31} To prevail on its claim of tortious interference with business relationships, appellant must demonstrate:
"(1) a business relationship or contract; (2) the wrongdoer's knowledge of the relationship or contract; (3) the wrongdoer's intentional and improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; (4) a lack of privilege; and (5) resulting damages." Bryan v. Farrell (Dec. 16, 1998), 9th Dist. No. 18973, quoting Brookeside Ambulance, Inc. v. Walker AmbulanceServ. (1996), 112 Ohio App.3d 150, 155-56.
To determine whether the action was improper, the courts must weigh the following factors:
"(a) the nature of the actor's conduct,
"(b) the actor's motive,
"(c) the interests of the other with which the actor's conduct interferes,
"(d) the interests sought to be advanced by the actor,
"(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
"(f) the proximity or remoteness of the actor's conduct to the interference and
"(g) the relations between the parties." Bryan, supra, citingBrookeside Ambulance, Inc., 112 Ohio App.3d at 156, quoting 4 Restatement of the Law 2d, Torts (1979), 26-27, Section 767.
 {¶ 32} In addition, the wrongdoer must act maliciously before there may be recovery. Tripp v. Beverly Enterprises-Ohio, Inc.,
9th Dist. No. 21506, 2003-Ohio-6821, at ¶ 48, citing Haller v.Borror Corp. (1990), 50 Ohio St.3d 10, 16. Furthermore, "[e]ven if an actor's interference with another's contract causes damages to be suffered, that interference does not constitute a tort if the interference is justified." Fred Siegel Co., L.P.A. v. Arter Hadden (1999), 85 Ohio St.3d 171, 176.
 {¶ 33} Appellant alleges that Landmark's and Landogs' placement of drilling notification signs and stakes on lot 89 for several days during the 2003 Parade of Homes interfered with its business of selling homes on lots it would have purchased. Appellant alleges that North Fork interfered with its business by acquiescing to the placement of drilling notification signs and stakes on North Fork property, and by allowing notification to prospective lot purchasers of Landmark's drilling rights.
 {¶ 34} Mark Michaels admitted in his deposition that Landmark and Landogs did not place signs and stakes on North Fork property to cause harm to appellant. Mr. Michaels testified that Landmark and Landogs engaged in such activity to extort money from North Fork by their threat to drill wells on North Fork property. Mr. Michaels testified that any harm to appellant was a mere byproduct of Landmark's and Landogs' actions against North Fork. Accordingly, appellant admitted through its president that Landmark and Landogs did not act intentionally and in an improper manner to prevent appellant from contracting with others for the sale of residential properties.
 {¶ 35} In addition, Landmark's right to drill on North Fork property was publicly recorded, so that Landmark and Landogs were privileged to erect markers notifying prospective buyers of their drilling rights in furtherance of their own business interests. Moreover, appellant was aware of Landmark's rights as evidenced by a July 24, 2003 letter from appellant's counsel to Lawyers Title in which counsel wrote:
"I need copies of the large plat maps so I can determine where the Land Mark Partners and their assigns may dig oil and gas wells (Clinton wells and non-Clinton wells, direct drilling and directional drilling).
"* * *
"P.S. From signs at the development, the start of drilling appears eminent."
 {¶ 36} Despite Landmark's right to drill wells and appellant's knowledge of that right, Mr. Michaels testified that he did not believe it was appropriate to inform prospective property buyers of Landmark's rights and he declined to discuss the matter with prospective buyers. Mr. Michaels further testified that some purchasers would in fact not want to know that a third party owned the mineral rights to the purchaser's property. In order to ensure that prospective property owners were fully informed that Landmark had rights to drill wells on Firestone Trace property, it marked the properties accordingly. Appellant has failed to present any evidence to demonstrate that such action by Landmark and Landogs was improper or done with the intent to harm appellant.
 {¶ 37} Moreover, appellees presented evidence to demonstrate that appellant could not show that it had been damaged by appellees' placement and acquiescence to placement of signs and stakes on North Fork property. Mr. Michaels admitted during his deposition that no prospective purchasers approached him during the Parade of Homes to inform him that they would not buy the property because of Landmark's signage indicating its right to drill wells on the property. Appellant failed to present any other evidence to rebut its admission that it could not identify anyone who refused to form a contract with appellant because of appellees' actions. Accordingly, appellant could not rebut appellees' evidence tending to show that appellant could not prove all the elements of its claim of interference with business. Under the circumstances, the trial court did not err by granting summary judgment in favor of appellees on appellant's second claim.
Slander of Tile
 {¶ 38} To prevail on its claim alleging slander of title, appellant must be able to prove "that a false statement was made, published maliciously, and the false statement resulted in a special pecuniary loss to the property holder." Baker, supra, citing Childers v. Commerce Mtge. Invest. (1989),63 Ohio App.3d 389, 392.
 {¶ 39} Appellant alleged that appellees improperly burdened the title to lot 89 by filing for a drilling permit on property they do not own.
 {¶ 40} This Court has already found that appellees presented unrebutted evidence that appellant did not own lot 89 at the time of alleged tortious conduct of appellees and therefore did hold title to the property. Appellant merely had a contract to purchase lot 89, but it never acted upon that contract. Lot 89 was owned by North Fork at the time, and appellant has no standing to pursue such claim on behalf of the property owner. Accordingly, the trial court did not err by granting summary judgment in favor of appellees on appellant's third claim.
Malicious Prosecution
 {¶ 41} In order to prevail on its claim of malicious prosecution, appellant must prove the following:
"(1) malicious institution of prior proceedings against [appellant] by [appellees], (2) lack of probable cause for the filing of the prior lawsuit, (3) termination of the prior proceedings in [appellant's] favor, and (4) seizure of [appellant's] person or property during the course of the prior proceedings." Robb v. Chagrin Lagoons Yacht Club, Inc. (1996),75 Ohio St.3d 264, syllabus.
Where a plaintiff has voluntarily dismissed its complaint, those prior proceedings have not been terminated in favor of the defendant. See Starinki v. Pace (1991), 81 Ohio App.3d 113,115.
 {¶ 42} Appellant alleges that when North Fork filed suit against Landmark in July of 2003 (in North Fork Dev. LLC v.Landmark Partners, et al., Summit County Court of Common Pleas No. CV2003-07-4446), North Fork caused Landmark to maliciously prosecute a third-party complaint against appellant. Appellant alleges that North Fork thereby contributed to the malicious prosecution against appellant.
 {¶ 43} Landogs did not file any action against appellant. Because Landogs did not institute any prior proceedings against appellant, the trial court did not err by granting summary judgment in favor of Landogs on appellant's claim alleging malicious prosecution.
 {¶ 44} On August 7, 2003, Landmark dismissed its third-party complaint against appellant without prejudice. Because those prior proceedings were therefore not terminated in appellant's favor, its claim alleging malicious prosecution does not lie. Accordingly, the trial court did not err by granting summary judgment in favor of Landmark on appellant's claim alleging malicious prosecution.
 {¶ 45} Further, North Fork did not file any action against appellant. Because this Court has already found that appellant's claim of malicious prosecution against Landmark does not lie, North Fork could not have caused Landmark to maliciously prosecute appellant. Accordingly, the trial court did not err by granting summary judgment in favor of North Fork on appellant's claim alleging malicious prosecution.
Abuse of Process
 {¶ 46} In order to prevail on its abuse of process claim, appellant must prove:
"(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." Robb, 75 Ohio St.3d at 270, quoting Yaklevich v. Kemp, Schaeffer Rowe Co., L.P.A. (1994),68 Ohio St.3d 294, 298.
 {¶ 47} Again, Landogs set no prior legal proceeding in motion as against appellant. Landogs was a defendant in case number CV2003-07-4446 in the Summit County Court of Common Pleas; it filed no counterclaims against any party. Accordingly, the trial court did not err by granting summary judgment in favor of Landogs on appellant's abuse of process claim.
 {¶ 48} Appellant has failed to plead that the prior litigation in case number CV2003-07-4446 was set in motion by Landmark and North Fork with probable cause. This Court previously addressed this issue. "Abuse of process does not liefor the wrongful bringing of an action, but for the improper use, or `abuse,' of process." (Emphasis in original.) Kremer v.Cox (1996), 114 Ohio App.3d 41, 51. We continued: "* * * Thus, if one uses process properly, but with a malicious motive, there is no abuse of process, though a claim for malicious prosecution may lie. * * *" Id. at 52, quoting Clermont EnvironmentalReclamation Co. v. Hancock (1984), 16 Ohio App.3d 9, 11.
 {¶ 49} In this case, appellant alleged in its complaint in relevant part:
"23. * * * [Landmark's] Third Party Complaint falsely stated that Landmark had drilling rights on sublot 89 and at paragraph 11 falsely stated that
`11. Landmark has become aware of North Fork, Elite and KNL have interfered and continue to interfere with Landmark's oil and gas rights * * *'
"25. Furthermore, in its Third Party Complaint, Landmark falsely accused Elite at paragraph 19 as follows * * *
"26. The false accusations by Landmark were filed one day after receipt of the North Fork Complaint and were filed without investigation and were intentional, and willful and constitute gross negligence, frivolous conduct under Ohio Revised Code2323.51 and a violation of Ohio Civil Rule of Procedure, Rule 11.
"27. Based upon such false allegations and without investigation, Landmark obtained a temporary restraining order against Elite's right to use and enjoy its sublot 89."
"63. * * * Landmark abused civil process by bringing into said lawsuit, without investigation, false and improper claims against Elite, and thus abused process as to Elite."
 {¶ 50} Appellant alleged repeatedly that Landmark's allegations in its third-party complaint against appellant in case number CV2003-07-4446 were premised on falsehoods and/or were made without investigation of the operative facts. In other words, appellant effectively alleged that Landmark's claims in the prior proceeding could not have been based on probable cause. As appellant failed to allege that Landmark set its prior litigation in motion with probable cause, the trial court did not err by granting summary judgment in favor of Landmark on appellant's claim alleging abuse of process.
 {¶ 51} Further, North Fork did not file any prior action against appellant. Because this Court has already found that appellant's claim alleging abuse of process against Landmark does not lie, North Fork could not have caused Landmark to abuse the legal process as against appellant. Accordingly, the trial court did not err by granting summary judgment in favor of North Fork on appellant's claim alleging abuse of process.
Failure to Negotiate/Execute a Contract in Good Faith
 {¶ 52} This Court has stated that parties who have entered into a contract are bound to each other by "standards of good faith and fair-dealing." Laurent v. Flood Data Serv., Inc.
(2001), 146 Ohio App.3d 392, 399, citing Bolling v. ClevepakCorp. (1984), 20 Ohio App.3d 113, 121. However, in Ohio, not every contract implicates an implied obligation to use good faith and fair dealing. Sammarco v. Anthem Ins. Cos., Inc. (1998),131 Ohio App.3d 544, 554-55. "Where a matter is specifically covered by the written terms of a contract, there are no implied promises in relation to that matter." Bd. of Trustees of UnionTwp. v. Planned Dev. Co. of Ohio (Dec. 11, 2000), 12th Dist. No. CA2000-06-109, citing Hamilton Ins. Serv., Inc. v. NationwideIns. Cos. (1999), 86 Ohio St.3d 270, 274. An obligation of good faith only arises where the parties have not explicitly resolved the matter by the terms of the contract. Planned Dev. Co. ofOhio, supra, citing Ed Shory Sons, Inc. v. Soc. Natl. Bank
(1996), 75 Ohio St.3d 433, 444. Quoting the Restatement Second of Contracts, this Court has recognized that
"`Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.' * * * [B]ad faith may consist of inaction, or may be the `abuse of a power to specify terms, [or] interference with or failure to cooperate in the other party's performance.'" Becker v. GoodyearTire and Rubber Co., 9th Dist. No. 22900, 2006-Ohio-1484, at ¶13.
 {¶ 53} Appellant alleges that North Fork breached its duty of good faith and fair dealing as of July 2, 2003 by failing to disclose to appellant Landmark's plan to drill oil and gas wells on Firestone Trace properties. The February 9, 2001 settlement agreement between North Fork and Landmark, which set out Landmark's right to drill such wells on Firestone Trace properties was recorded and, therefore, a matter of public record. Mark Michaels testified during his deposition that his sister Stephanie Gilbert, as appellant's vice president, sells appellant's real estate and works on appraisals and property taxes. As such, Ms. Gilbert is a professional who has experience working with public records. Furthermore, appellant was clearly aware of Landmark's rights as again evidenced by a July 24, 2003 letter from appellant's counsel to Lawyers Title in which counsel wrote:
"I need copies of the large plat maps so I can determine where the Land Mark Partners and their assigns may dig oil and gas wells (Clinton wells and non-Clinton wells, direct drilling and directional drilling).
"* * *
"P.S. From signs at the development, the start of drilling appears eminent."
 {¶ 54} There is no question that appellant was aware in July 2003 of Landmark's plan to drill oil and gas wells on Firestone Trace properties. Because of appellant's awareness, there is no evidence to support a finding that North Fork breached any duty of good faith and fair dealing by failing to disclose information already known to appellant. Accordingly, the trial court did not err by granting summary judgment in favor of North Fork on appellant's claim alleging failure to negotiate/execute a contract in good faith.
Negligence/Willful and Gross Negligence
 {¶ 55} To prevail on a claim of negligence, appellant must establish the existence of a duty, a breach of that duty, and an injury proximately resulting from the breach of duty. Menifee v.Ohio Welding Prod., Inc. (1984), 15 Ohio St.3d 75, 77. Whether or not a duty exists is a question of law. Williams v. Garcias
(Feb. 7, 2001), 9th Dist. No. 20053.
 {¶ 56} In regard to North Fork, appellant alleges only that North Fork had a duty to negotiate with appellant in good faith by disclosing Landmark's plan to drill oil and gas wells on Firestone Trace properties. This Court has already addressed this issue within the context of appellant's claim alleging failure to negotiate/execute a contract in good faith. Because appellant cannot establish that North Fork owed a duty to appellant to disclose public information of which appellant already had knowledge, appellant's claim against North Fork alleging negligence must fail as a matter of law. Accordingly, the trial court did not err by granting summary judgment in favor of North Fork on appellant's tenth cause of action.
 {¶ 57} In regard to Landmark and Landogs, appellant alleges that those entities owed a duty of care to appellant and that both entities breached and willfully and grossly breached their duties. However, appellant fails to articulate what specific duty Landmark and Landogs might have owed to appellant. In the absence of any duty, appellant's claims alleging negligence and willful and gross negligence must fail as a matter of law. Accordingly, the trial court did not err by granting summary judgment in favor of Landmark and Landogs on appellant's claims alleging negligence and willful and gross negligence.
Conspiracy
 {¶ 58} To prevail on its claim against Landmark and Landogs alleging conspiracy, appellant must be able to prove "`a malicious combination of two or more persons to injure another person or property in a way not competent for one alone, resulting in actual damages.'" Wolford v. Sanchez, 9th Dist. No. 05CA008674, 2005-Ohio-6992, at ¶ 18, quoting LeFort v.Century 21-Maitland Realty Co. (1987), 32 Ohio St.3d 121, 126.
 {¶ 59} Appellant claims that Landmark and Landogs engaged in an illegal and improper conspiracy premised on their illegal acts as alleged in appellant's other seven claims against the two entities.
 {¶ 60} It is axiomatic that a civil conspiracy claim may not stand alone. Because this Court has already found that Landmark and Landogs are entitled to summary judgment on all of appellant's remaining claims against those two entities, appellant's claim alleging civil conspiracy must fail as a matter of law. Accordingly, the trial court did not err by granting summary judgment in favor of Landmark and Landogs on appellant's claim alleging civil conspiracy.
Fraud/Misrepresentation
 {¶ 61} To prevail on its claim alleging fraudulent misrepresentation, appellant must prove:
"that there was a representation; or where there was a duty to disclose, concealment of a fact which is material to the transaction; made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; with the intent of misleading another into relying upon it; justifiable reliance upon the representation or concealment; and a resulting injury proximately caused by the reliance." DiCillo v. Prindle, 9th Dist. No. 21618, 2004-Ohio-2366, at ¶ 27.
 {¶ 62} Further, a party is liable for non-disclosure where
"the party fails to exercise reasonable care to disclose a material fact which may justifiably induce another par[t]y to act or refrain from acting, and the non-disclosing party knows that the failure to disclose such information to the other party will render a prior statement or representation untrue or misleading."Budai v. Euclid Spiral Paper Tube Corp. (Jan. 22, 1997), 9th Dist. No. 96CA0046, quoting Central States Stamping Co. v.Terminal Equip. Co. (C.A.6, 1984), 727 F.2d 1405, 1409.
 {¶ 63} Appellant claims that North Fork concealed from it material information about Landmark's claims to drilling rights on Firestone Trace properties, when North Fork sold lots to appellant.
 {¶ 64} This Court has already noted that the evidence demonstrates that the February 9, 2001 settlement agreement between North Fork and Landmark which set out Landmark's right to drill oil and gas wells on Firestone Trace properties was recorded and therefore a matter of public record. Furthermore, appellant's counsel was aware of such rights as evidenced by his July 24, 2003 letter to Lawyers Title in which counsel requested copies of plat maps detailing where Landmark was authorized to drill oil and gas wells. Finally, the July 3, 2003 agreement between appellant and North Fork provides that North Fork would furnish a general warranty deed, conveying the property to appellant, free and clear of all liens and encumbrances "except (a) such encroachments and recorded restrictions, easements, and conditions, including without limitation subsurface rights * * *" Accordingly, by the terms of the contract, appellant was on notice that another party may possess subsurface rights, including the right to drill oil and gas wells, to the properties appellant contracted to purchase. Under these circumstances, this Court finds that there is no evidence that North Fork concealed from appellant the fact that Landmark had oil and gas drilling rights on Firestone Trace properties. Accordingly, the trial court did not err by granting summary judgment in favor of North Fork in regard to appellant's claim alleging fraud/misrepresentation.
Breach of Contract
 {¶ 65} To prevail on its claim alleging breach of contract, appellant must prove "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." Kunkle v. Akron Mgt. Corp., 9th Dist. No. 22511,2005-Ohio-5185, at ¶ 18, quoting Doner v. Snapp (1994),98 Ohio App.3d 597, 600.
 {¶ 66} Appellant alleges that North Fork is liable to it for damages for breach under two separate contracts. First, appellant alleges that North Fork breached the July 3, 2003 agreement between the two parties, because permits were not available to appellant and appellant could not get natural gas hook ups to its properties. Under the terms of the July 3, 2003 agreement, North Fork was obligated to install private water and sanitary sewer services by December 31, 2002. Appellant does not allege that North Fork failed to do so, only that North Fork billed sewer installation at a rate higher than first quoted. In addition, the agreement obligated North Fork to relocate any oil and gas pipelines, excluding those of East Ohio Gas Company, which interfered with appellant's construction of homes. There is no contractual obligation that North Fork supply such lines itself. Accordingly, appellant cannot establish that North Fork breached the terms of the parties' July 3, 2003 agreement. Under these circumstances, the trial court did not err by granting North Fork's motion for summary judgment in regard to appellant's breach of contract claim alleging North Fork breached its July 3, 2003 agreement with appellant.
 {¶ 67} Appellant also alleges, however, that North Fork breached a contract between North Fork and the Home Builders Association ("HBA") under which contract appellant was a third-party beneficiary.
 {¶ 68} No one can maintain a suit for breach of contract unless that person is an original party to the contract or derives rights from an original party. Bush v. Roelke (Sept. 19, 1990), 9th Dist. No. 90CA004800, citing 18 Ohio Jurisprudence 3d 67, Contracts, Section 173. This Court has held that while "one may enjoy an enforceable contractual right without being specifically named in the agreement * * * the original parties [to the contract] must intend to benefit a third party before enforceable rights may be asserted." (Internal citations omitted.) Bush, supra. "A third party who simply receives a benefit from the agreement, without more, is only an incidental beneficiary and may not sue under the contract." Id., citingVisintine Co. v. New York, Chicago St. Louis Railroad Co.
(1959), 169 Ohio St. 505, 507.
 {¶ 69} Further, the Ohio Supreme Court discussed the principles underlying the rights of third-party beneficiaries inHill v. Sonitrol of Southwestern Ohio, Inc. (1988),36 Ohio St.3d 36, 40, in which the high court held:
"* * *
"We adopt the statement of law with respect to intended and incidental beneficiaries found in Section 302 of the Restatement of the Law 2d, contracts (1981) 439-440. Section 302 states:
"`(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
"`(a) * * *, or
"`(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
"`(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.'
"Comment e to Section 302 states:
"`Performance of a contract will often benefit a third person. But unless the third person is an intended beneficiary as here defined, no duty to him is created. * * *"
 {¶ 70} In this case, the North Fork/HBA contract provided that North Fork would pay $2500 to the HBA per home built in the 2003 Summer Parade of Homes and that the HBA promised to advertise to promote the home building industry. North Fork further agreed to hold certain lots in the Firestone Trace development for sale to authorized builders who had an agreement with the HBA to participate in the 2003 Parade of Homes. Appellant was an authorized builder which had such an agreement with the HBA. In addition, the agreement obligated North Fork to prepare Firestone Trace sites for the erection of homes to be shown to the general public during the 2003 Parade of Homes. North Fork was obligated to prepare the site so that builders could build upon the lots before December 1, 2002. North Fork was obligated to prepare and maintain parking areas not later than two weeks before the commencement of the Parade of Home.
 {¶ 71} In its motion for summary judgment, North Fork argued merely that appellant had no standing to enforce the North Fork/HBA contract.[3] Even assuming that North Fork met its initial burden to show that appellant's breach of contract claim must fail for lack of standing, appellant presented evidence to demonstrate that a genuine issue of material fact exists regarding whether appellant was a third-party beneficiary under the terms of the North Fork/HBA contract.
 {¶ 72} Mark Michaels averred in his affidavit that appellant was a member of the HBA and that it was aware of and relied upon the terms in the North Fork/HBA contract. Mr. Michaels averred that appellant relied upon the contract terms as material conditions for the 2003 Parade of Homes and therefore contracted with North Fork to purchase property and build a home for the parade and contracted with the HBA to build and show a house in the parade. Under these circumstances, this Court finds that a genuine issue of material fact exists regarding whether appellant was a third-party beneficiary under the terms of the North Fork/HBA contract. Given the contract's obligations that North Fork hold certain lots for sale to authorized builders with agreements with the HBA and that North Fork prepare the site for the erection of homes for showing during the 2003 Parade of Homes, coupled with appellant's knowledge of and reliance upon such terms, this Court finds that a genuine issue of material fact exists regarding whether appellant was an intended or mere incidental beneficiary of the North Fork/HBA contract.
 {¶ 73} Although there was evidence that appellant ultimately sold both homes it constructed on Firestone Trace at the asking prices, Mr. Michaels averred in his affidavit that North Fork's delay in preparing the site for construction delayed appellant's construction and caused appellant both time and expense in preparing its lots. Mr. Michaels further averred that North Fork's delay in preparing and maintaining parking areas delayed the commencement of the 2003 Parade of Homes, for which appellant had prepared a significant marketing campaign. Accordingly, there was some evidence that appellant sustained damages as a result of North Fork's failure to timely perform its obligations under its contract with the HBA. Accordingly, the trial court erred by granting North Fork's motion for summary judgment on its claim alleging breach of contract as that claim relates to the North Fork/HBA contract.
 {¶ 74} Appellant's fourth assignment of error is overruled as it relates to all appellees and all claims, except as to appellant's claim alleging breach of contract against North Fork regarding North Fork's liability to appellant as a third-party beneficiary to the contract between North Fork and the HBA. On that sole claim, and as to that limited issue, appellant's fourth assignment of error is sustained.
 III. {¶ 75} Appellant's first, second and third assignments of error are overruled. Appellant's fourth assignment of error is overruled as it relates to all appellees and all claims, except as to appellant's claim alleging breach of contract against North Fork regarding North Fork's liability to appellant as a third-party beneficiary to the contract between North Fork and the HBA. On that sole claim, and as to that limited issue, appellant's fourth assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is affirmed, in part, and reversed, in part, and the cause remanded to the trial court for further proceedings consistent with this decision.
Judgment affirmed, in part, reversed, in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
Slaby, P.J. Whitmore, J. concur.
[1] Gas Solutions Ltd. is a company which maintains oil and gas wells on behalf of Landogs and would have provided such maintenance had Landmark actually caused the drilling of wells on North Fork properties. Although Gas Solutions Ltd. was originally named as a defendant in this case, appellant dismissed the entity with prejudice on February 9, 2005.
[2] The claims against Oil Gas Solutions Ltd. were dismissed with prejudice on February 9, 2004.
[3] Assuming that appellant had standing, North Fork further argued that any dispute appellant had with North Fork in regard to its performance under the contract with the HBA must have been submitted to the HBA Dispute Resolution Committee pursuant to the HBA Regulations and Code of Ethics. The contract itself does not provide for any such dispute resolution, and North Fork failed to attach a copy of the HBA Regulations and Code of Ethics or any sworn statement in support of such statement. Accordingly, North Fork did not meet its burden to show that appellant's breach of contract claim must fail for this reason.