[Cite as *Bindra v. Fuenning*, 2013-Ohio-5722.]

STATE OF OHIO  )    IN THE COURT OF APPEALS
        )ss:    NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

AKHIL BINDRA, et al.      C.A. No.  26489

   Appellants

   v.           APPEAL FROM JUDGMENT
              ENTERED IN THE
CHARLES FUENNING, et al.   COURT OF COMMON PLEAS
              COUNTY OF SUMMIT, OHIO
   Appellees       CASE No.  2010-04-2349

DECISION AND JOURNAL ENTRY

Dated: December 26, 2013

MOORE, Presiding Judge.

**{¶1}** Plaintiffs-Appellants, Akhil Bindra, et al., appeal from the May 15, 2012 judgment entry of the Summit County Court of Common Pleas. Defendants-Appellees, Charles Fuenning, et al., cross-appeal from the May 15, 2012 judgment entry. We affirm, in part, reverse, in part, and remand to the trial court for further proceedings consistent with this decision.

I.

**{¶2}** This matter stems from a dispute between the shareholders of Northeast Ohio Pulmonary, Critical Care and Sleep Associates, Inc. ("NPCS"), a medical practice founded in the 1980's, specializing in pulmonary, critical care, hospitalist, and sleep medicine. NPCS operates under a Close Corporation Agreement, which means that the shareholders of the corporation act as the board of directors. As of 2007, NPCS was owned by seven shareholder physicians. The shareholders were divided into two groups corresponding with their hospital system of choice:

(1) the Summa Shareholders, and (2) the Akron General Shareholders. The Summa Shareholders included Doctors Charles Fuenning, Robert Hines, Brian White, and Hitesh Makkar. The Akron General Shareholders included Doctors Sanjiv Tewari, Harish Kakarala, and Timothy Murray. NPCS also employed associate physicians, as well as clinical and administrative staff.

{¶3} NPCS hired Dr. Akhil Bindra as an associate pulmonary critical care physician in January of 2006. Initially, Dr. Bindra practiced at Akron City Hospital, a Summa entity, under the supervision of Doctors Fuenning and Makkar. However, due to a need for physicians, Dr. Bindra was moved to Akron General Hospital, and practiced under the supervision of Doctors Tewari, Kakarala, and Murray. As a condition of his employment, Dr. Bindra signed an Employment Agreement with NPCS for a one-year term as an associate physician. The Employment Agreement also contained two automatic extensions, under the same terms and conditions of the original contract, for up to two consecutive one-year periods (for a total of three years). Then, after three years from the effective date of the Employment Agreement, the terms stated that Dr. Bindra could either be offered shareholder status with no buy-in at NPCS's discretion, or his contract with NPCS would automatically expire.

{¶4} In 2007, the Akron General Shareholders learned of an article in MD News wherein Dr. Fuenning disclosed his involvement in the creation of a new hospital. According to the article, Dr. Fuenning and his *colleagues* "made it their mission to change the healthcare system, starting in Northeast Ohio." This article brought about even more animosity between the Summa and Akron General Shareholders.

{¶5} In 2008, the Summa Shareholders filed a complaint for the judicial dissolution of NPCS. During this period of corporate upheaval, Dr. Makkar allegedly informed Dr. Bindra that

he would not become a shareholder, and that his employment with NPCS would cease as of January 16, 2009. On November 3, 2008, the Shareholders called a meeting and officially voted on whether Dr. Bindra should become a shareholder, and on whether Dr. Bindra's employment contract should be extended past the initial three years. The Summa Shareholders voted against both propositions. However, in an effort to avoid additional litigation, they later agreed by written consent to extend Dr. Bindra's employment contract until after the trial court ruled upon the pending lawsuit for judicial dissolution of NPCS. Ultimately, the trial court refused to judicially dissolve NPCS, the Shareholders settled all claims, and the Summa Shareholders resigned from the corporation.

{¶6} In April of 2010, Dr. Bindra filed a complaint against Doctors Fuenning, Hines, Makkar, and White ("Summa Doctors"), alleging (1) tortious interference with a prospective business relationship, and (2) civil conspiracy. The Summa Doctors answered, filed a counterclaim against Dr. Bindra, and filed a third-party complaint against NPCS and Doctors Tewari, Murray, and Kakarala ("Akron General Doctors"), seeking indemnity and declaratory judgment. The Summa Doctors then dismissed their third-party complaint without prejudice.

{¶7} In November of 2010, the Summa Doctors filed a motion to dismiss Dr. Bindra's complaint, and the trial court converted it into a motion for summary judgment. The trial court granted summary judgment in favor of the Summa Doctors. Dr. Bindra moved for more time for discovery under Civ.R. 56(F), and filed an appeal. The trial court vacated its order granting summary judgment, thus allowing additional time for discovery. Further, this Court dismissed Dr. Bindra's appeal for lack of a final, appealable order.

{¶8} In September of 2011, the Summa Doctors simultaneously filed an amended counterclaim against Dr. Bindra, and a third-party complaint against the Akron General Doctors.

The amended counterclaim/third party-complaint alleged shareholder derivative action/breach of contract against Dr. Bindra and the Akron General Doctors, civil conspiracy against Dr. Bindra and the Akron General Doctors, sought declaratory judgment that the Summa Doctors' actions were taken in the course and scope of their duties as shareholders, and sought indemnification from NPCS.

{¶9} After the completion of discovery, the parties filed cross-motions for summary judgment.

{¶10} The trial court (1) granted summary judgment in favor of the Summa Doctors on the claims set forth in Dr. Bindra's complaint, (2) granted summary judgment in favor of Dr. Bindra on the claims set forth in the Summa Doctors' counterclaim, and (3) granted summary judgment in favor of the Akron General Doctors on the claims set forth in the Summa Doctors' third-party complaint. The trial court also granted declaratory judgment and indemnification in favor of the Summa Doctors against NPCS, although the Summa Doctors did not move for summary judgment on these issues.

{¶11} Dr. Bindra and NPCS filed a joint appeal, raising two assignments of error for our consideration. Further, the Summa Doctors cross-appealed, raising one assignment of error for our consideration.

II.

**APPEAL**

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT ENTERED SUMMARY JUDGMENT AGAINST DR. BINDRA ON HIS CLAIMS FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS AND CIVIL CONSPIRACY, BECAUSE IT DECIDED MATERIAL ISSUES OF FACT ABOUT WHETHER THE SUMMA SHAREHOLDERS ACTED UNDER A RECOGNIZED COMMON LAW PRIVILEGE.

5

**{¶12}** An appellate court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). It applies the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983). Pursuant to Civ.R. 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in the favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). The moving party bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996). Specifically, the moving party must support its motion by pointing to some evidence in the record indicated in Civ.R. 56(C). *Id.* Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. *Id.* at 293; Civ.R. 56(E).

**{¶13}** In *Haller v. Borror Corp.*, 50 Ohio St.3d 10, 16 (1990), the Supreme Court of Ohio stated:

> A tort is a wrong that results in harm to another, and an intentional tort is one in which the actor intends to produce the harm that ensues. It is not enough that he intend to perform the act; he must intend to produce the harm. The law recognizes a duty to abstain from the wrong of intentional harm to others. To constitute the wrong there must be *some invasion of a right held by another, or a breach of that right, or a failure to perform a duty in respect to that right*. The harm may be to person or property. To sustain an action for the harm there must be an injury to a recognized legal right. A mere intention to do a wrong not connected with the infringement of a legal right cannot be made the subject of a civil action. 88 Ohio Jurisprudence 3d, Torts, Section 10, at 314 (1989).

(Emphasis added.)

{¶14} The elements of "tortious interference with a business relationship are: (1) a contractual or business relationship; (2) knowledge of the relationship by the tortfeasor; (3) an intentional and improper act by the tortfeasor preventing formation of a contract, procuring breach of a contract, or terminating a business relationship; (4) lack of privilege on the part of the tortfeasor; and (5) resulting damages." (Citations omitted.) *Tripp v. Beverly Ent.-Ohio, Inc.*, 9th Dist. Summit No. 21506, 2003-Ohio-6821, ¶ 48. "A tortfeasor in such a case must act maliciously before courts will permit recovery." *Id.*, citing *Haller* at 16. Also, "[e]ven if an actor's interference with another's contract causes damages to be suffered, that interference does not constitute a tort if the interference is justified." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 176 (1999).

{¶15} Further, civil conspiracy is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.,* 72 Ohio St.3d 415, 419 (1995), quoting *LeFort v. Century 21-Maitland Realty Co.,* 32 Ohio St.3d 121, 126 (1987). This Court has recognized that, to establish a cause of action for civil conspiracy, the plaintiff must have asserted "(1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful act independent from the conspiracy itself. [T]he underlying unlawful act must be a tort." (Internal citations omitted.) *LaSalle Bank, N.A. v. Kelly,* 9th Dist. Medina No. 09CA0067-M, 2010-Ohio-2668, ¶ 33 (internal citations omitted) (quoting *Wright Safety Co. v. U.S. Bank, N.A.,* 9th Dist. Summit No. 24587, 2009-Ohio-6428, ¶ 32); *see Gosden v. Louis,* 116 Ohio App.3d 195, 221-22 (9th Dist.1996).

{¶16} Here, Dr. Bindra argues that the Summa Doctors tortuously interfered with his prospective business relationship with NPCS by voting against him becoming a shareholder, in

spite of their alleged verbal assurances that he would become a shareholder at the end of his initial three-year contract. Dr. Bindra also argues that the Summa Doctors maliciously conspired among themselves to cause him harm.

{¶17} In their motion for summary judgment, the Summa Doctors argue that Dr. Bindra cannot prove the elements of tortious interference with a business relationship and/or civil conspiracy because he had no right to become a shareholder, they had an absolute right and privilege as Shareholders to determine partnership issues, there was no illegal act performed against Dr. Bindra, and, based upon the Close Corporation Agreement, every Shareholder had the ability to deny Dr. Bindra partnership status for non-discriminatory reasons.

{¶18} In support of these arguments, the Summa Doctors presented the following as evidence: (1) NPCS is a corporation governed by an Amended and Restated Close Corporation Agreement; (2) pursuant to the agreement, a new shareholder can be admitted to NPCS by an affirmative vote of the Shareholders holding at least 75% of the shares at a duly authorized meeting, which equates to 6 out of 7 Shareholders; (3) in 2006, Dr. Bindra was hired by NPCS as an associate physician; (4) he signed an Employment Agreement with NPCS for one year, with two automatic, consecutive one-year extensions, unless otherwise terminated; (5) after the initial term of three years, Dr. Bindra's contract would either automatically expire, or he would become a shareholder at the Board's discretion; (6) the Employment Agreement explicitly stated that "[t]he Employee hereby acknowledges and understands that [] [NPCS] has no obligation to offer such shareholder status to [] [Dr. Bindra] and as such there is no guarantee that [] [Dr. Bindra] will be able to become a shareholder in [] [NPCS]"; (7) the Employment Agreement also explicitly stated that "[t]his agreement embodies all representations, obligations, agreements and conditions in relation to the subject matter hereof, and no representations, obligations,

agreements or conditions, oral or otherwise, exist amongst the parties except as herein expressly set forth"; (8) in November of 2008, a special partners meeting was held in order to vote on whether Dr. Bindra should become a shareholder in NPCS, and/or whether his employment contract should be extended past the initial three-year term; (9) the Akron General Shareholders voted in favor of both propositions, and the Summa Shareholders voted against both propositions, thus causing both to fail; (10) Dr. Hines stated on the record that the decision not to make Dr. Bindra a partner, or extend his employment contract, was for financial reasons and because NPCS was in the midst of dissolution litigation; and (11) in December of 2008, all NPCS Shareholders signed an action by written consent extending Dr. Bindra's employment contract past the initial three-year term until at least the dissolution litigation was resolved.

{¶19}  In response, Dr. Bindra argues that genuine issues of material fact exist, such as the "meaning of the Shareholder Consent agreement to the motives and intentions of the [Summa Doctors] relative to [] [Dr. Bindra]," and he attaches the Summa Doctors' responses to discovery as exhibits to his memorandum.  However, Dr. Bindra does not point to any specific facts showing a genuine issue for trial with regard to whether he had a "right" to become a shareholder in NPCS, and whether the Summa Doctors acted maliciously, improperly, or illegally in voting against his membership at the Shareholders' meeting.  *See Haller*, 50 Ohio St.3d., at 16.

{¶20}  Even in construing the evidence in a light most favorable to Dr. Bindra, the trial court did not err in granting summary judgment in favor of the Summa Doctors on the claims of tortious interference with business relationships and civil conspiracy.  The record simply does not support Dr. Bindra's allegations that he had a *right* to become a shareholder in NPCS, and that the Summa Doctors tortiously violated that right by voting against his prospective membership in the corporation.  The Employment Agreement very clearly states that there is no

guarantee of becoming a shareholder, and that this decision is left to the sole discretion of the Shareholders. Further, the Employment Agreement also states that no representations, obligations, agreements or conditions, oral or otherwise, exist among the parties, except for those contained within the agreement. As such, if the Summa Doctors did, in fact, praise Dr. Bindra's work, tell him he was on track to becoming a shareholder, and eventually use him as a pawn in their litigation against the Akron General Doctors, these acts do not rise to the level of malice or illegality necessary to prove the torts of interference with business relationships and civil conspiracy.

{¶21} Therefore, for the reasons discussed above, we conclude that Dr. Bindra's claims for tortious interference with business relationships and civil conspiracy fail as a matter of law.

{¶22} Accordingly, Dr. Bindra's and NPCS's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED WHEN IT ENTERED SUMMARY JUDGMENT FOR THE SUMMA SHAREHOLDERS ON THEIR DECLARATORY JUDGMENT CLAIM, BECAUSE THE SUMMA SHAREHOLDERS NEVER MOVED FOR SUMMARY JUDGMENT ON THAT CLAIM, AND BECAUSE THE TRIAL COURT IMPROPERLY RESOLVED DISPUTED MATERIAL FACT ISSUES IN RULING THAT THE SUMMA SHAREHOLDERS "WERE ACTING WITHIN THE COURSE AND SCOPE OF THEIR AUTHORITY AS SHAREHOLDERS OF NPCS DURING THE EVENTS THAT GAVE RISE TO THIS LAWSUIT."

{¶23} In their second assignment of error, Dr. Bindra and NPCS argue that the trial court erred in granting summary judgment in favor of the Summa Doctors on their declaratory judgment claim. We agree.

{¶24} "Civ.R. 56 does not authorize courts to enter summary judgment in favor of a non-moving party." *Marshall v. Aaron*, 15 Ohio St.3d 48 (1984), at syllabus. "'A trial court has no authority to sua sponte grant summary judgment upon grounds which were not first addressed

in a valid motion submitted by the prevailing party.'" *Miller v. Pennitech Indus. Tools, Inc.*, 9th Dist. Medina No. 2356-M, 1995 WL 230894, *6 (Apr. 19, 1995), quoting *Salter v. Marco*, 9th Dist. Lorain No. 91CA005182, 1992 WL 112565, *2 (May 20, 1992). "Nor does a court have the authority to grant summary judgment in the absence of motion or argument on a particular claim." *Miller* at *6.

{¶25} Here, the trial court granted summary judgment in favor of the Summa Doctors on their claim for declaratory judgment/indemnification. However, the Summa Doctors did not move for summary judgment on this issue. Therefore, in the absence of a valid motion filed on these particular claims, the trial court did not have the authority to grant summary judgment on this basis. *See Miller* at *6.

{¶26} Accordingly, Dr. Bindra and NPCS's second assignment of error is sustained.

**CROSS-APPEAL**

**CROSS-APPELLANT'S ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT ON COUNT ONE OF SUMMA SHAREHOLDERS' THIRD-PARTY COMPLAINT ASSERTING A SHAREHOLDER DERIVATIVE ACTION AND COUNT TWO ASSERTING A CIVIL CONSPIRACY CLAIM.

{¶27} In their cross-assignment of error, the Summa Doctors argue that the trial court erred in granting summary judgment in favor of Dr. Bindra and the Akron General Doctors on the derivative action and civil conspiracy claim set forth in their third-party complaint.

{¶28} Civ. R. 23.1 governs derivative actions by shareholders, stating that:

In a derivative action brought by one or more legal or equitable owners of shares to enforce a right of a corporation, the corporation having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors and, if necessary, from

the shareholders and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders similarly situated in enforcing the right of the corporation. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders in such manner as the court directs.

It is well-settled that "[a] plaintiff-shareholder does not have an independent cause of action where there is no showing that he has been injured in any capacity other than in common with all other shareholders as a consequence of the wrongful actions of a third party directed towards the corporation." *Adair v. Wozniak*, 23 Ohio St.3d 174, 175 (1986). In addition, "[w]here the defendant's wrongdoing has caused direct damage to corporate worth, the cause of action accrues to the corporation, not to the shareholders, even though in an economic sense real harm may well be sustained by the shareholders as a result of reduced earnings, diminution in the value of ownership, or accumulation of personal debt and liabilities from the company's financial decline. The personal loss and liability sustained by the shareholder is both duplicative and indirect to the corporation's right of action." *Id*. at 178.

{¶29} Here, the Summa Doctors allege that, while they were still shareholders in NPCS, Dr. Bindra breached his Employment and Recruitment Agreements by taking excessive vacation days and participating in a business that directly competed with NPCS. The Summa Doctors further allege that the Akron General Doctors knew about Dr. Bindra's behavior, but refused to enforce his Employment Agreement, causing the Summa Doctors to suffer monetary damages. We note that the Summa Doctors do not allege any direct damage to NPCS, but only to their personal salaries and bonuses. *See* Civ.R. 23.1.

{¶30} Upon careful review of the record, and in construing the facts in a light most favorable to the Summa Doctors, we conclude that *if* NPCS suffered a monetary loss to its

corporate worth, because of the actions of Dr. Bindra and the Akron General Doctors, all NPCS Shareholders, including the Summa Doctors, would have suffered the *same* pecuniary injury. As such, the trial court did not err in finding, as a matter of law, that the Summa Doctors did not have an independent cause of action to bring a shareholder derivative action against Dr. Bindra and the Akron General Doctors. *See Adair* at 178.

{¶31} The Summa Doctors also allege that Dr. Bindra and the Akron General Doctors engaged in a civil conspiracy with regard to the alleged breaches of Dr. Bindra's Employment and Recruitment Agreements. As stated above, civil conspiracy is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty*, 72 Ohio St.3d at 419, quoting *LeFort at* 126. This Court has recognized that, to establish a cause of action for civil conspiracy, the plaintiff must have asserted "(1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful act independent from the conspiracy itself. [T]he underlying unlawful act must be a tort." (Internal citations omitted.) *LaSalle*, 2010-Ohio-2668, ¶ 33.

{¶32} Upon careful review of the record, and in construing the facts in a light most favorable to the Summa Doctors, we conclude that there is no evidence of an unlawful act, independent from the alleged conspiracy itself, arising out of tort. *See LaSalle* at ¶ 33. Therefore, the trial court did not err in finding, as a matter of law, that the Summa Doctors could not prove the tort of civil conspiracy because "breach of contract cannot serve as the underlying independent tortious act." *See also Wagoner v. Leach Co.*, 2d Dist. Montgomery No. 17580, 1999 WL 961166, *2 (July 2, 1999), for the proposition that "a party cannot be held liable for conspiring to breach his own contract."

**{¶33}** Accordingly, the Summa Doctors' sole cross-assignment of error is overruled.

III.

**{¶34}** In overruling Dr. Bindra and NPCS's first assignment of error, and sustaining their second assignment of error, and in overruling the Summa Doctors' sole cross-assignment of error, the decision of the Summit County Court of Common Pleas is affirmed, in part, reversed, in part, and remanded for further proceedings consistent with this decision.

> Judgment affirmed, in part,
> reversed, in part,
> and remanded.

—————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

CARLA MOORE
FOR THE COURT

WHITMORE, J.
CONCURS.

CARR, J.
CONCURRING IN JUDGMENT ONLY.

{¶35} I agree with the majority's conclusion in the first assignment of error that Dr. Bindra's claims for tortious interference with a prospective business relationship and civil conspiracy fail as a matter of law. I would analyze this assignment of error, however, from the perspective of privilege and conclude that the Summa Doctors acted with privilege in casting their votes to deny Dr. Bindra shareholder status.

{¶36} Dr. Bindra alleged in his complaint that he had an expectation that he would become a shareholder in NPCS based on the actions and representations of the business' partners, and that the Summa Doctors acted alone and in concert to interfere with that business opportunity. Effectively, Dr. Bindra alleged that the Summa Doctors wrongfully acted to procure a breach of the company's alleged agreement to make him a shareholder. I agree generally with the majority's recitation of the elements of the claim of tortious interference with a business relationship. Those elements are: "(1) a business relationship or contract; (2) the wrongdoer's knowledge of the relationship or contract; (3) the wrongdoer's intentional and improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; (4) a lack of privilege; and (5) resulting damages." *Elite Designer Homes, Inc. v. Landmark Partners*, 9th Dist. Summit No. 22975, 2006-Ohio-4079, ¶ 31. When the Ohio Supreme Court first adopted the elements of a claim for tortious interference with business relations, it did so while adopting the analysis of the Restatement of the Law 2d, Torts (1979), which explained that the wrongdoer would not be a party to the contract. *Kenty v.*

*Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 418-419 (1995). Accordingly, Ohio courts implicitly recognize the wrongdoer's third party status as an element of the claim.

{¶37} The Eighth District Court of Appeals addressed a similar situation wherein the plaintiffs alleged that various managers, officers, and employees of the corporation with which they had contracts tortiously interfered with their business relationships. *Castle Hill Holdings, LLC v. Al Hut, Inc.*, 8th Dist. Cuyahoga No. 86442, 2006-Ohio-1353. The *Castle Hill* court recognized that "it is generally established that corporate officers are not capable of interfering with contracts to which their principal is party." *Id.* at ¶ 47, citing *Erebia v. Chrysler Plastic Products Corp.*, 891 F.2d 1212, 1215-1216 (6th Cir.1989). This is because corporate officers, directors, and shareholders maintain "a privilege to interfere with contracts in furtherance of their legitimate business interests." *Castle Hill* at ¶ 48; ¶ 79 (applying the privilege to a majority shareholder). The privilege is destroyed, however, where the corporate officer assumes the role of a third party, acting not as an agent of the corporation, but rather in his or her personal capacity and contrary to the interests of the corporation. *Id.* at ¶ 47-48.

{¶38} Both the trial court and Dr. Bindra invoked various, but different, factors to be considered in determining whether the Summa Doctors acted with privilege in casting their votes against Dr. Bindra. While I agree with Dr. Bindra that the current factors enumerated in Restatement of the Law 2d, Torts, Section 767 (1979), are relevant to an analysis of a claim of intentional interference in business relations, I do not agree that those factors are implicated in determining the limited issue of privilege. Instead, as this Court recognized in *Elite Designer*

*Homes, supra*, at ¶ 31, the seven Restatement factors[1] are relevant to a determination whether the alleged wrongdoer's action was improper, not whether the alleged wrongdoer acted with privilege. As noted above, the impropriety of the wrongdoer's action and the existence of privilege are two distinct elements of a claim of tortious interference with business relations. Nevertheless, Comment b. to Section 767 of the Restatement appears to recognize the interplay between the propriety of actions and the privilege to so act. The comment further notes the "evol[ution of] crystallized privileges or rules defining conduct that is not improper." Two sections of the Restatement of Torts enunciate rules that I believe clarify the concept of privilege applicable to circumstances such as those in the instant case.

{¶39} Section 771 states:

One who intentionally causes a third person not to enter into a prospective contractual relation with another in order to influence the other's policy in the conduct of his business does not interfere improperly with the other's relation if

the actor has an economic interest in the matter with reference to which he wishes to influence the policy of the other and

the desired policy does not unlawfully restrain trade or otherwise violate an established public policy and

the means employed are not wrongful.

{¶40} Section 773 states:

One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction.

---

[1] The factors include "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties."

{¶41} In the instant case, there is no dispute of fact that the Summa Doctors wished to dissolve NPCS and filed a lawsuit to effectuate that result. Dr. Bindra recognized as much in his complaint. The Summa Doctors, as shareholders in NPCS, necessarily had certain interests, whether economic or otherwise, which they believed could only be effectuated through dissolution of the corporation. The seeking of a judicial dissolution of a corporation is not an act inherently founded on impropriety, bad faith, or malice. In fact, dissolution is proper for reasons such as that the objectives of the corporation have become impracticable or where corporate directors have become deadlocked in the management of corporate affairs and shareholders have not been able to break the deadlock. R.C. 1701.91(A). That the Summa Doctors sought to pursue corporate objectives different from the Akron General Doctors, and that they attempted to obtain their corporate objectives by voting against Dr. Bindra's attaining the status of shareholder and partner did not negate their privilege as a matter of law. Moreover, Dr. Bindra failed to present any evidence that the Summa Doctors acted in any way outside the scope of their privilege as shareholders as delineated in the recognized Restatement privileges cited above. Because the Summa Doctors acted with privilege, they were not third parties who acted to interfere with the business relations between Dr. Bindra and NPCS. Instead, they were parties to the business relationship. Accordingly, I would conclude that the trial court did not err by granting summary judgment in favor of the Summa Doctors after concluding that those doctors did not act without privilege.

{¶42} To the extent that Dr. Bindra has argued in support of these claims that he had a right to become a shareholder based on some agreement between the parties or that he justifiably relied to his detriment on the statements or actions of various shareholders, such claims sound in contract, rather than in tort. Although Dr. Bindra alleged in his complaint that the Summa

Doctors acted "intentionally, improperly and maliciously," the Ohio Supreme Court has held that the use of such words does not convert a claim for breach of contract into a tort claim. *Ketcham v. Miller*, 104 Ohio St. 372, 377 (1922). Accordingly, in this regard too, his claims for tortious interference with a business relationship and civil conspiracy fail as a matter of law.

APPEARANCES:

JOHN F. HILL, Attorney at Law, for Appellants.

STEPHEN J. PRUNESKI, Attorney at Law, for Appellees.