[Cite as *Deems v. Ecowater Sys., Inc.*, 2016-Ohio-5022.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

RICK DEEMS, et al.

    Appellants

      v.

ECOWATER SYSTEMS, INC., et al.

    Appellees

C.A. No.     27645

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2013-02-1202

DECISION AND JOURNAL ENTRY

Dated: July 20, 2016

MOORE, Judge.

{¶1}    Plaintiffs Rick and Ron Deems appeal from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2}    Ronald Learn owned a water treatment business known as Lindsay Soft Water ("Lindsay"), which was an authorized dealer for EcoWater Systems, LLC ("EcoWater"), a manufacturer of water treatment products. Mr. Learn became interested in selling Lindsay, and he commenced discussions with potential buyers. Although an EcoWater dealer may sell its business entity without restriction by EcoWater, the EcoWater authorized dealership status does not transfer with the business absent EcoWater approval.

{¶3}    One potential buyer interested in acquiring Lindsay, Rick Deems, had long been employed in the water treatment business. Rick Deems' father, Ron Deems, was planning to invest in his son's business. Ron Deems previously had been an authorized dealer for EcoWater,

but he had become engaged in a lawsuit with EcoWater, which settled in 2002. As part of the settlement agreement, Ron Deems was precluded from thereafter operating as a dealer for EcoWater. Rick Deems was not a party to that lawsuit.

{¶4} Mr. Learn also engaged in discussions for the sale of Lindsay with Hempy Water Conditioning, Inc. ("Hempy"), a water treatment supplier, which was an existing authorized dealer for EcoWater. After several discussions between the parties, Mr. Learn ultimately sold Lindsay to Hempy.

{¶5} In 2013, the Deemses filed a complaint against EcoWater and Hempy (collectively "Appellees") asserting several claims arising from the alleged conduct of Appellees' representatives prior to and during the course of negotiations in the sale of Lindsay. These claims included tortious interference with a contract, tortious interference with a business relationship, fraud, and civil conspiracy. During the trial court proceedings, Appellees moved for summary judgment in their favor. The trial court granted their motions and dismissed the Deemses' complaint. The Deemses timely appealed, and they now raise four assignments of error for our review. We have consolidated the assignments of error, and we will address certain assignments of error out of order to facilitate our discussion.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE APPELLEES BECAUSE THERE WERE GENUINE ISSUES OF FACT IN DISPUTE AND BECAUSE THEY WERE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT IMPROPERLY GRANTED SUMMARY JUDGMENT ON THE FRAUD COUNT.

## ASSIGNMENT OF ERROR II

SUMMARY JUDGMENT WAS IMPROPER ON [RICK] DEEMS' TORTIOUS INTERFERENCE CLAIMS.

## ASSIGNMENT OF ERROR IV

SUMMARY JUDGMENT WAS LIKEWISE IMPROPER ON THE CIVIL CONSPIRACY CLAIM AS TO RICK DEEMS.

{¶6} In their assignments of error, the Deemses argue that the trial court erred in granting summary judgment in favor of EcoWater and Hempy on Rick Deems' claims for fraud, tortious interference, and civil conspiracy. We disagree.

{¶7} We review an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶8} Pursuant to Civ.R. 56(C), summary judgment is proper only if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶9} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93, 1996-Ohio-107. "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." *Id.* at 293. If the movant satisfies this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.*, quoting Civ.R. 56(E).

**{¶10}** Here, the relevant portions of the depositions on which the parties relied in support of, and in opposition to, summary judgment follow.

**{¶11}** In Mr. Learn's deposition, he maintained that when he decided to sell Lindsay, he called EcoWater to obtain information to assist him in valuing the business. An EcoWater employee named Dean Roberts returned his call and informed Mr. Learn that Hempy may be interested in purchasing Lindsay. Thereafter, meetings were arranged for Mr. Learn with potential buyers, including Hempy and Rick Deems, who was also interested in purchasing Lindsay. Mr. Learn maintained that he told Rick Deems that Mr. Learn would require any purchaser of Lindsay to obtain EcoWater dealership approval.

**{¶12}** The then current president of Hempy, Jeff Knedler, recalled in his deposition that Mr. Roberts called him and advised him that he had referred Mr. Learn to Hempy as a potential buyer for Lindsay. Around this same time, Mr. Learn had called him regarding the sale of Lindsay as well. Sometime in early June 2012, Mr. Knedler, Paul Staley (the former president of Hempy who was at that time a member of Hempy's board), and another employee of Hempy had several meetings with Mr. Learn. Mr. Learn was adamant that the purchaser of Lindsay be approved as an EcoWater dealership. Mr. Learn had mentioned to Mr. Knedler that he was considering selling Lindsay to "the Deemses[.]" At some point during their discussions concerning the sale of Lindsay, Mr. Knedler mentioned to Mr. Learn the 2002 lawsuit between "the Deemses" and EcoWater. Mr. Knedler stated in his deposition that he did so because he was surprised that the Deemses and EcoWater "would want to reenter into a business arrangement after they have sued one another." Mr. Learn and Mr. Knedler both maintained that Mr. Knedler did not provide Mr. Learn with any further details about that lawsuit. Mr. Knedler stated that he was not aware that Rick Deems was not involved in the 2002 lawsuit.

**{¶13}** In his deposition, Rick Deems maintained that he had been interested in purchasing Lindsay because it was close to his home, and he expressed to the manager of Lindsay his interest in purchasing the company if Mr. Learn decided to sell. Rick Deems was familiar with Mr. Staley from their shared experience in the water treatment industry. At some point prior to Mr. Staley's retirement party in 2011, Mr. Deems approached Mr. Staley, in confidence, and told him that he was interested in purchasing Lindsay when Mr. Learn decided to sell it, and Mr. Deems sought Mr. Staley's advice on such a transaction.

**{¶14}** Rick Deems maintained that in early June of 2012, Mr. Learn called Mr. Deems and told him that he was ready to sell Lindsay. Within the next couple of days, Rick Deems met with Mr. Learn and his accountant to discuss the sale of Lindsay, at which time Mr. Learn provided Rick Deems with financial information regarding Lindsay. Thereafter, Rick Deems and Mr. Learn engaged in negotiations, at no time during which did Mr. Learn condition the sale on Mr. Deems' acquiring approval as an EcoWater dealer. Rick Deems maintained that in June, 2012, Mr. Learn agreed to sell him Lindsay for $400,000. However, Mr. Learn thereafter canceled the agreement because he believed that $400,000 was too low of a sales price. Mr. Learn also told Rick Deems that he needed to look into becoming an EcoWater dealer. Thereafter, Rick Deems called Mr. Roberts and told him that he was interested in buying Lindsay, and he inquired as to what he needed to do in order to become approved as an EcoWater dealer. Mr. Roberts told Rick Deems that he would need a signed agreement to begin the process of becoming an EcoWater dealer.

**{¶15}** In Mr. Roberts' deposition, he maintained that, after he provided Mr. Learn with Hempy's name as a potential buyer for Lindsay, he did not hear anything further about the sale until he received a call from Rick Deems. Rick Deems indicated that he was buying Lindsay and

that he wanted to become an EcoWater dealer. Mr. Roberts maintained that, after Rick Deems informed him that he was purchasing Lindsay, Mr. Roberts called Mr. Knedler, and asked him if Hempy was still pursuing Lindsay. Mr. Knedler informed him that Hempy was still pursuing it. Mr. Roberts never heard anything further from Rick Deems regarding his interest to become an EcoWater dealer.

{¶16} Rick Deems maintained that Mr. Knedler had advised him that Mr. Roberts had told him of Rick Deems' interest in acquiring Lindsay. Mr. Deems advised Mr. Knedler that he had previously sought Mr. Staley's advice on purchasing Lindsay, and Mr. Staley had given Rick Deems his "confidence that [Hempy was] not interested in it at the time." Mr. Knedler responded that he "respected that, but if * * * [Mr.] Learn and [Rick Deems] could not come to an agreement, then [Hempy] would be interested in purchasing the business." In Mr. Knedler's deposition, he disputed that he had ever made such a statement.

{¶17} In the deposition of Barbara Paulson, an EcoWater employee, she maintained that, in the summer of 2012, Mr. Knedler had called her and asked her if she was aware that Mr. Learn was selling Lindsay to "the Deems family[.]" Mr. Knedler asked her if she knew who the Deemses were, and she replied that she did not. Mr. Knedler explained to her that they had previously been involved in a lawsuit with EcoWater. Ms. Paulson inquired of Mr. Knedler if he was interested in purchasing Lindsay, and she believed he responded with words to the effect of "for the right price." Ms. Paulson relayed this information to her supervisor, the president of EcoWater, who told her to "[j]ust follow the process" that is in place when dealers are selling their businesses. Ms. Paulson explained that if EcoWater is informed that one of its dealers is selling the dealer's business, EcoWater would reach out to the dealer to inquire as to the status of the business. However, the purchaser would still have to be approved as an EcoWater dealer.

Before sending out an application to the buyer, EcoWater would require that the seller or buyer provide it with something to show "that it isn't just talk." In this case, after Mr. Knedler called her regarding the sale of Lindsay, Ms. Paulson called Mr. Learn to inquire as to status of his sale of Lindsay. During this call, she reminded him that the rights under the dealer agreement do not transfer with the sale of the business, and a prospective buyer would have to go through the application process to become a dealer. Ms. Paulson told Mr. Learn that she did not know who his buyers were, but "if the buyers are people with whom [EcoWater] had been in a lawsuit, [Ms. Paulson] would be hard-pressed to think that they would become dealers again." However, she further indicated that she "did not know" and the application process should be followed "if in fact they were interested in becoming dealers."

{¶18}   Mr. Deems maintained that, at a meeting with Mr. Learn at the end of July, 2012, he offered Mr. Learn $550,000 for Lindsay, and Mr. Learn responded that this was a very fair offer, and accepted. However, Mr. Learn maintained that he never agreed to sell Lindsay for this price, but he did tell Mr. Deems that the price "sound[ed] great." Mr. Learn stated that after this meeting with Mr. Deems, a woman named "Barb" from EcoWater called him explaining that Mr. Deems "would not be franchised.[1]" At that point Mr. Learn decided to sell Lindsay to Hempy.

{¶19}   In their motions for summary judgment, Appellees maintained that, construing this evidence most strongly in favor of the Deemses, no question of material fact existed as to the claims, and they were entitled to judgment as a matter of law. The trial court agreed. On appeal, the Deemses argue in their third, second, and fourth assignments of error that the trial court improperly granted Appellees summary judgment on Rick Deems' fraud, tortious interference,

[1] In the deposition of Barbara Paulson, she explained that EcoWater is not a franchise organization, but the parties appear to agree that the term "franchise" is used by EcoWater dealers as denoting that they are authorized EcoWater dealers.

and civil conspiracy claims, respectively. In their first assignment of error, the Deemses present only the law applicable to summary judgment proceedings. As they develop no argument in the first assignment of error applying this law to the present proceedings, it is overruled on this basis. *See* App.R. 16(A)(7). We will separately review the Deemses challenges' to summary judgment on the fraud, tortious interference, and civil conspiracy claims.

Fraud

**{¶20}** In order to establish a fraud claim, it must be shown that there existed:

> (1) a representation (or concealment of a fact when there is a duty to disclose) (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, and (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the reliance.

*Universal Real Estate Solutions, Inc. v. Snowden*, 9th Dist. No. 27171, 2014-Ohio-5813, ¶ 12, citing *Volbers-Klarich v. Middletown Mgt., Inc.*, 125 Ohio St.3d 494, 2010-Ohio-2057, ¶ 27, citing *Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St.3d 69, 73 (1986). Generally "fraud cannot be predicated upon promises or representations relating to future actions or conduct." *Crase v. Shasta Beverages, Inc.*, 10th Dist. Franklin No. 11AP-519, 2012-Ohio-326, ¶ 42*; see Block v. Block*, 165 Ohio St. 365, 377 (1956). In addition, "[o]ne who fails to disclose material information prior to the consummation of a transaction commits fraud *only when he is under a duty to do so*. And the duty to disclose arises when one party has information 'that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.'" (Emphasis added and omitted.) *Snowden* at ¶ 12, quoting *State v. Warner*, 55 Ohio St.3d 31, 54, quoting *Chiarella v. United States*, 445 U.S. 222, 228 (1980).

**{¶21}** Here, the trial court granted summary judgment to Appellees on this claim after concluding that no triable issue existed as to the element of a false representation. On appeal, the

Deemses develop an argument only with respect to fraud purportedly committed by Mr. Knedler on behalf of Hempy, maintaining that Mr. Knedler misrepresented that he would respect Rick Deems' previous conversation with Mr. Staley and that Hempy would be interested in purchasing Lindsay if Rick Deems and Mr. Learn could not reach an agreement. We limit our discussion accordingly.

**{¶22}** In Hempy's motion for summary judgment, with respect to Mr. Knedler's purported statement to Rick Deems, it pointed to Mr. Knedler's deposition, wherein he maintained that this discussion had never occurred. However, Hempy acknowledged that Rick Deems maintained in his deposition that Mr. Knedler told him that if Mr. Deems and Mr. Learn "could not come to an agreement, then [Hempy] would be interested in purchasing [Lindsay]." Nonetheless, Hempy maintained, in part, that this statement would not amount to a misrepresentation.

**{¶23}** In response, the Deemses maintained Mr. Knedler's statement to Rick Deems was untruthful because Hempy was already actively pursuing the purchase of Lindsay when the statement was made. Accordingly, the Deemses appear to implicitly argue that it can be inferred from this purported statement that Mr. Knedler was assuring Rick Deems that Hempy was refraining from any discussions with Mr. Learn regarding the Lindsay sale while Rick Deems was negotiating with Mr. Learn. Although we must construe all reasonable inferences in favor of the non-moving party, we cannot agree with the Deemses that such an inference can reasonably be inferred. First, we note that the Deemses fail to cite to the record within their arguments in support of their assignments of error. *See* App.R. 16(A)(7). Nonetheless, our review of Rick Deems' representation of Mr. Knedler's statement, as set forth in Rick Deems' deposition as quoted above, does not indicate, expressly or through reasonable inference, that Mr. Knedler

represented to Rick Deems that Hempy was refraining from *discussing or researching* a potential sale with Mr. Learn while Mr. Learn was negotiating with Rick Deems.

**{¶24}** Accordingly, the Deemses' third assignment of error is overruled.

Tortious Interference

**{¶25}** With respect to the Deemses' claim for tortious interference with a contract, the elements of this claim include: "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Magnum Steel & Trading, L.L.C. v. Mink*, 9th Dist. Summit Nos. 26127, 26231, 2013-Ohio-2431, ¶ 10, quoting *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 1995-Ohio-61, paragraph two of the syllabus. "Establishment of the fourth element of the tort of tortious interference with contract, lack of justification, requires proof that the defendant's interference with another's contract was improper." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 172, 1999-Ohio-260, paragraph two of the syllabus.

**{¶26}** With respect to a claim for tortious interference with a business relationship, this claim "is similar [to a tortious interference with a contract claim] but occurs when the result of the interference is not breach of contract, but that a third party does not enter into or continue a business relationship with the plaintiff." *Magnum* at ¶ 10, quoting *Oliver v. Wagner*, 9th Dist. Medina No. 2832-M, 1999 WL 1215131, *3 (Dec. 8, 1999). *See also Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Servs., Inc.*, 81 Ohio App.3d 591, 598 (9th Dist.1992)

**{¶27}** In determining whether purported interference is improper, and therefore lacks justification, courts apply the following factors:

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference and

(g) the relations between the parties.

*Walter v. Murphy*, 61 Ohio App.3d 553, 555 (9th Dist.1988); *Elite Designer Homes, Inc. v. Landmark Partners*, 9th Dist. Summit No. 22975, 2006-Ohio-4079, ¶ 31; Restatement of the Law 2d, Torts, Section 767 (1979); *Fred Siegel Co., L.P.A.* at paragraph three of the syllabus.

{¶28}  With specific application to an interference with a prospective contract in the context of competition, the following factors are used in determining whether competition is a wrongful interference:

(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if[:]

(a) the relation concerns a matter involved in the competition between the actor and the other and

(b) the actor does not employ wrongful means and

(c) his action does not create or continue an unlawful restraint of trade and

(d) his purpose is at least in part to advance his interest in competing with the other.

*Walter* at 556, quoting Restatement, Section 768.

{¶29}  In addition, the Restatement, Section 772, provides that:

One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation, by giving the third person

(a) truthful information, or

(b) honest advice within the scope of a request for the advice.

{¶30} In the first two counts of their complaint, the Deemses alleged that Appellees wrongfully, intentionally and maliciously and without privilege or justification, interfered with the purported contract and business relationship between Rick Deems and Mr. Learn.

{¶31} In their motions for summary judgment, Appellees argued, in part, that, even construing the evidence in the light most favorable to the Deemses, their purported interference was not improper. Appellees cited the depositions of Mr. Learn, Mr. Knedler, and Ms. Paulson. Hempy maintained that these depositions established that: Mr. Knedler's comments to Ms. Paulson and Mr. Learn with respect to the prior litigation between "the Deems family" and EcoWater provided only truthful information. In its motion for summary judgment, EcoWater maintained, in part, that Ms. Paulson and Mr. Roberts never made a false statement. EcoWater pointed to Mr. Roberts' and Ms. Paulson's depositions, wherein they maintained that signed, written proof of a sales agreement was required prior to sending out an application for dealer approval under these circumstances, and EcoWater never received such a writing from Rick Deems.

{¶32} In the Deemses' response, with respect to whether a triable issued existed as to whether the Appellees interfered, and whether such interference was wrongful or without justification or privilege, the Deemses maintained:

> [Appellees] repeatedly interfered with both the relationship and the contract making Rick [Deems'] performance of his agreement with [Mr.] Learn impossible and causing [Mr.] Learn to breach his agreement with Rick Deems and sell the business to Hempy for $515,000.

> The interference was wrongful. [Appellees] conspired by using breaches of confidence, false and misleading statements and omissions and statements placing Rick Deems in a false light and without legal justification the only basis being that Ron Deems, Rick[']s father, had defended himself by counterclaiming against

an Eco[Water] lawsuit, 12 years before, a lawsuit that Rick [Deems] was not aware of and to which he was not a party.

{¶33} Although the Deemses response to summary judgment additionally provided a list of eighty-four purported facts, the Deemses did not delineate which of these facts supported their position that Appellees "conspired by using breaches of confidence, false and misleading statements * * * placing Rick Deems in a false light and without legal justification[.]"

{¶34} The trial court concluded that "[s]uch a summary and categorical response without citation to the record wholly failed to satisfy a non-moving party's reciprocal burden in summary judgment proceedings." However, the trial court continued on to review the record evidence, and, with respect to the element of wrongfulness, it concluded that Hempy and EcoWater pointed to evidence that their actions pertained to the pursuit of legitimate business interests, and that there was no evidence of malicious motives or wrongful interference.

{¶35} On appeal, the Deemses maintain that the record contains several facts regarding interference by Hempy and EcoWater: (1) Mr. Staley's assurance to keep information disclosed to him by Rick Deems confidential, from which Mr. Deems maintains that "[a] reasonable jury could find that [Mr.]Staley agreed to keep this information confidential and agreed on behalf of Hempy not to make an end around to purchase Lindsay's assets out from under [Rick] Deems," (2) EcoWater doing "whatever it could to assist Hempy in acquiring Lindsay and in preventing [Rick] Deems from doing so[,]" in that Mr. Roberts "vouch[ed]" for Hempy and maintained communications with Hempy regarding the sale, (3) Mr. Knedler of Hempy using EcoWater to cast doubt on Rick Deems by referencing the 2002 lawsuit involving EcoWater and Ron Deems and informing Mr. Learn of this suit, (4) Ms. Paulson of EcoWater making a "not-so-veiled suggestion" to Mr. Learn that Rick Deems would not be approved as an EcoWater dealer, and (5) Hempy and EcoWater's use of the prohibitions from the 2002 lawsuit, which did not involve Rick

Deems, to "fraudulently and intentionally induce Mr. Learn to repudiate the contract and/or business relations with [Rick] Deems[.]" Although the Deemses generally categorize some of these actions as "fraudulent[,]" they do not set forth how any of these actions amounted to fraud or otherwise indicate these actions would support the element of "improper" interference so as to defeat a motion for summary judgment on this basis. *See Walter*, 61 Ohio App.3d at 555. Nor do they point us to anywhere in their response to summary judgment where they pointed to evidence demonstrating a triable issue as to "improper" interference/ lack of justification. *See Dresher*, 75 Ohio St.3d at 293; *see also* App.R. 16(A)(7). Instead, the Deemses address this element of their tortious interference claims by maintaining that whether Hempy or EcoWater "intentionally or wrongfully" interfered would be a question for the jury to decide.

{¶36} We conclude that the Appellees met their initial summary judgment burden of pointing to evidence that established the absence of a question of fact on the tortious interference claims on the element of lack of justification, and, in response, the Deemses failed to meet their reciprocal burden. *See Dresher* at 293. Because improper interference/ lack of justification is an element to both a tortious interference with contract claim and a tortious interference with business relations claim (*Magnum*, 2013-Ohio-2431, at ¶ 10), the trial court properly granted summary judgment to the Appellees on both of these claims. Accordingly, we overrule the Deemses' second assignment of error on this basis.

Civil Conspiracy

{¶37} Lastly, with respect to the Deemses' civil conspiracy claim, such a claim requires "(1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful act independent from the conspiracy itself. [T]he underlying unlawful act must be a tort." *Bindra v. Fuenning*, 9th Dist. Summit No. 26489, 2013-

Ohio-5722, ¶ 31, quoting *LaSalle Bank, N.A. v. Kelly*, 9th Dist. Medina No. 09CA0067-M, 2010-Ohio-2668, ¶ 33.

**{¶38}**    Here, Appellees moved for summary judgment on this claim arguing, in part, that because summary judgment should be granted to them on the remaining claims in the complaint, there existed no independent "unlawful act" to support this claim.    On appeal, the Deemses appear to maintain that the underlying "unlawful act" was tortious interference with contract or a business relationship.    However, we have determined that the trial court properly granted summary judgment in favor of Appellees on the tortious interference claims, and, accordingly, they cannot serve as the underlying unlawful act for the civil conspiracy claim.    *See Elite Designer Homes*, 2006-Ohio-4079, at ¶ 60.

**{¶39}**    Therefore, the Deemses' fourth assignment of error is overruled.

III.

**{¶40}**    The Deemses' assignments of error are overruled.  The judgment of the trial court is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.


_____
CARLA MOORE
FOR THE COURT


SCHAFER, J.
CONCURS.

CARR, P. J.
DISSENTING.

{¶41} In considering the evidence and resolving all reasonable inferences in the light most favorable to the non-moving party, I would reverse as I believe genuine issues of material fact remain. *Leibreich v. A.J. Refrigeration., Inc*., 67 Ohio St.3d 266, 269 (1993).


APPEARANCES:

BRENT L. ENGLISH, Attorney at Law, for Appellants.

JOSEPH W. PAPPALARDO, MAIA E. JERIN and COLLEEN A. MOUNTCASTLE, Attorneys at Law, for Appellee.

JOHN F. HILL and MELINDA SMITH YEARGIN, Attorneys at Law, for Appellee.

BRUCE A. CURRY, Attorney at Law, for Appellee.