[Cite as *Cedar Lane Farms v. Besancon*, 2019-Ohio-1389.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| | |
|---|---|
| CEDAR LANE FARMS CORP. | C.A. No. 18AP0025 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| WILLIAM BESANCON | COURT OF COMMON PLEAS COUNTY OF WAYNE, OHIO |
| Appellee | CASE No. 2014 CVC-H 000441 |

DECISION AND JOURNAL ENTRY

Dated: April 15, 2019

SCHAFER, Presiding Judge.

{¶1} Plaintiff-Appellant, Cedar Lane Farms Corp. ("Cedar Lane") appeals from the judgment of the Wayne County Court of Common Pleas entering summary judgment in favor of Defendant-Appellee, William Besancon. For the reasons that follow, this Court reverses.

I.

{¶1} Cedar Lane leased or otherwise occupied certain real property, which is presently owned by Mr. Besancon, since at least 1986. Cedar Lane used the property for its greenhouse operations. Pursuant to an agreement with Mr. Besancon, Cedar Lane was permitted to use a portion of this property known as the "North Field" for an algae research project. In May of 2011, Cedar Lane entered into an agreement with Touchstone Research Laboratory, Ltd. ("Touchstone") for Touchstone to engage in algae production and operate an algae research facility on the North Field. Touchstone conducted the algae operation until August 12, 2014, when it terminated its relationship with Cedar Lane.

{¶2}   Representatives of Arizona State University and the Arizona Center for Algae Technology and Innovation (collectively the "Arizona Representatives"), who were the funding sources for Touchstone's research, visited the algae facility on August 27, 2014, in order to finalize research and collect certain assets.  At the time of the Arizona Representatives' August 27, 2014 visit to the algae facility at the North Field, the status of the North Field was the subject of dispute in a separate legal action between Cedar Lane and Mr. Besancon in the Wayne County Court of Common Pleas Case No. 2014 CVC-A 000251 (the "2014 Action").  Also at this time, Cedar Lane was contemplating entering a business relationship for algae production and/or research with the Arizona Representatives.

{¶3}   While the Arizona Representatives were present at the algae facility, Mr. Besancon went to the site and began to question the Arizona Representatives on various topics such as who they were, what they were doing at the facility, and what they were taking from the facility.  Mr. Besancon returned to the facility the following day, August 28, 2014, and resumed his query of the Arizona Representatives.  Dr. Thomas Dempster, one of the Arizona Representatives, was present for both of Mr. Besancon's visits.  Per Cedar Lane's request, Dr. Dempster summarized his first interaction with Mr. Besancon in a letter the following day.  Dr. Dempster followed up with an email to Cedar Lane to report the second visit from Mr. Besancon. In his email Dr. Dempster stated the following to Cedar Lane:

> Based on the interaction from both of [Mr.] Besancon's visits, I cannot in good conscience recommend that [Arizona State University] ever utilize this site. [Mr.] Besancon stated that your lease will end in less than 1 year and that I need to be discussing lease options with him.  Furthermore, I will be telling my customers in Michigan that siting their algae production facility at Cedar Lane Farms appears to be much more trouble than it's worth.  I will locate another production facility for them.

If the situation and harassment by [Mr.] Besancon dissipate or cease completely, then I may be interested in reconsidering encouraging my Michigan customer to revisit a possible production facility at CDL.

**{¶4}** On September 18, 2014, Cedar Lane filed the present action against Mr. Besancon asserting a single cause of action for tortious interference with a business relationship. Cedar Lane alleged that Mr. Besancon knew of Cedar Lane's prospective business relationship with the Arizona Representatives and that he intentionally interfered with that relationship. Specifically, Cedar Lane claimed that Mr. Besancon's interference caused the Arizona Representatives not to enter the relationship with Cedar Lane to conduct algae research at the Facility and to advise "all of [the Arizona Representatives'] partners throughout the country that they should not locate an algae production facility at the Facility."

**{¶5}** The algae production facility used by Touchstone was located on the North Field portion of Mr. Besancon's property. When Cedar Lane commenced this action, it maintained the position that its lease rights included the North Field. Prior to engaging with Touchstone to operate the algae facility on the North Field, Cedar Lane did enter an agreement with Mr. Besancon to use the North Field for algae production for a period of three years. However, following a trial in the 2014 Action, the court entered judgment finding, in relevant part, that "[t]he North Field was never part of any lease agreement between [Mr. Besancon and Cedar Lane]." Further, the court found that Cedar Lane had "no rights to the North Field" because "the agreement to use it for the algae project ha[d] expired."

**{¶6}** In light of the judgment issued in the 2014 Action, Mr. Besancon filed a motion for summary judgment contending that Cedar Lane's claim for tortious interference with a business relationship must fail. In the motion, Mr. Besancon asserted that Cedar Lane alleged in its complaint that Mr. Besancon "interfered with a prospective business relationship by causing

[the Arizona Representatives] to recommend the current algae facility located at the Besancon farm not be used as a potential site for their research." Further, Mr. Besancon averred that the algae facility is located on the North Field and cited to the judgment entry in the 2014 Action as evidence that Cedar Lane had no rights in the North Field. Mr. Besancon argued that summary judgment was appropriate because his alleged acts of interference occurred at a time when Cedar Lane had "no rights in the algae facility []or to the land upon which it sits" and, therefore, Cedar Lane cannot prove that it was damaged by the loss of a business relationship to conduct algae operations at the facility.

{¶7} In its brief in opposition to the motion for summary judgment Cedar Lane conceded that it had no lease right in the North Field—per the disposition of the 2014 Action—and would not have been able to undertake a business relationship with the Arizona Representatives at the algae facility on the North Field. However, Cedar Lane argued that the North Field was irrelevant to its claim, and that summary judgment was not appropriate because genuine issues of material fact are in dispute. First, Cedar Lane asserted that an issue remained as to whether Mr. Besancon intentionally interfered with its opportunity to conduct business with the Arizona Representatives on property adjacent to the North Field. Second, Cedar Lane argued that an issue existed as to whether Mr. Besancon "essentially scared the Arizona Representatives away" and precluded Cedar Lane from removing the algae assets from the North Field and relocating them for use elsewhere.

{¶8} The trial court ruled in favor of Mr. Besancon and granted summary judgment on the sole claim asserted in Cedar Lane's complaint. In its decision, the trial court found that "all algae research and production took place on the North Field" and, "[a]t the time of the alleged interference by [Mr. Besancon], [Cedar Lane] had no rights to the North Field."

{¶9} Cedar Lane appeals from the trial court's decision granting summary judgment and raises one assignment of error.

II.

## Assignment of Error I

**The trial court erred by granting [Mr. Besancon]'s motion for summary judgment because genuine issues of material fact remain as to whether [Cedar Lane] had the ability to enter into a contract with the Arizona Representatives involving the use of the algae assets on lands other than the North Field.**

{¶10} In its sole assignment of error, Cedar Lane argues that the trial court erred in granting the motion for summary judgment because issues of fact remained as to whether Cedar Lane could have removed and relocated certain algae assets in order to enter a business relationship with the Arizona Representatives involving algae research and production.

{¶11} Before summary judgment may be granted under Civ.R 56(C), the trial court must determine each of the following:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). We review a trial court's ruling on a motion for summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶12} Summary judgment proceedings create a burden-shifting paradigm. To prevail on a motion for summary judgment, the movant has the initial burden to identify the portions of the record demonstrating the lack of a genuine issue of material fact and the movant's entitlement to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). In satisfying

the initial burden, the movant need not offer affirmative evidence, but it must identify those portions of the record that support its argument. *Id*. at 293. Once the movant overcomes the initial burden, the non-moving party is precluded from merely resting upon the allegations contained in the pleadings to establish a genuine issue of material fact. Civ.R. 56(E). Instead, it has the reciprocal burden of responding and setting forth specific facts that demonstrate the existence of a "genuine triable issue." *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶13} Cedar Lane's complaint alleged a single cause of action for tortious interference with a business relationship. "The elements of 'tortious interference with a business relationship are: (1) a contractual or business relationship; (2) knowledge of the relationship by the tortfeasor; (3) an intentional and improper act by the tortfeasor preventing formation of a contract, procuring breach of a contract, or termination of a business relationship; (4) lack of privilege on the part of the tortfeasor; and (5) resulting damage.'" *Bindra v. Fuenning*, 9th Dist. Summit No. 26489, 2013-Ohio-5722, ¶ 14, quoting *Tripp v. Beverly Ent.-Ohio, Inc.*, 9th Dist. Summit No. 21506, 2003-Ohio-6821, ¶ 48. A claim for tortious interference with a business relationship is similar to a claim of tortious interference with a contract, "'but occurs when the result of the interference is not breach of contract, but that a third party does not enter into or continue a business relationship with the plaintiff.'" *Deems v. Ecowater Sys.*, 9th Dist. Summit No. 27645, 2016-Ohio-5022, ¶ 26, quoting *Magnum Steel & Trading, L.L.C. v. Mink*, 9th Dist. Summit Nos. 26127, 26231, 2013-Ohio-2431, ¶ 10.

{¶14} In paragraph four of the complaint, Cedar Lane alleges:

[Cedar Lane] and [Mr. Besancon] have entered into a certain lease agreement and subsequent extensions ("Lease"), wherein [Cedar Lane] would lease from [Mr. Besancon] certain real property ("Premises") for [Cedar Lane]'s use in its greenhouse operation ("Facility").

(Parentheticals sic.) The term "Facility" as used here can be interpreted to include the "Premises" that Cedar Lane leased from Mr. Besancon for use in its greenhouse operations. Cedar Lane attached a copy of a lease to its complaint. Upon the filing of the complaint, Cedar Lane undoubtedly believed the Facility to *include* the algae operation located on the North Field, however it is unclear whether "Facility" was *limited* to the algae production facility.

{¶15} Cedar Lane alleges that Mr. Besancon knew of its potential business relationship with the Arizona Representatives when he entered the "Facility" on August 27, 2014, without notice to Cedar Lane "as required by the Lease." Throughout the complaint, Cedar Lane uses the term "Facility" to describe the location of the algae operation, the site the Arizona Representatives visited, and the place where Mr. Besancon made contact with the Arizona Representatives and asked them allegedly "inappropriate, harassing, and intimidating questions" regarding their authority and relationship to Cedar Lane. At paragraph fourteen of the complaint, Cedar Lane alleged that "[p]rior to August 27, 2014, the [Arizona] Representatives were considering entering into a contractual relationship with [Cedar Lane] to conduct algae research *at the Facility*." (Emphasis added.) Further, Cedar Lane alleged in the complaint that, as a result of Mr. Besancon's actions, the Arizona Representatives would "not recommend *the Facility* as a potential site to conduct research" and to advise "all of their partners throughout the country that they should not locate an algae production facility *at the Facility*." (Emphasis added.) Cedar Lane concludes at paragraph seventeen of the complaint that it was Mr. Besancon's intentional interference that caused the Arizona Representatives not to locate or recommend *the Facility* as the location for an algae production facility.

{¶16} In his motion for summary judgment, Mr. Besancon argued that he was entitled to judgment as a matter of law because the decision in the 2014 Action definitively established that

Cedar Lane had no rights in the algae facility located on the North Field or to the land on which it sits. Mr. Besancon asserted that, because Cedar Lane lacked rights to the algae facility, it could not have incurred damages. In support of his argument, Mr. Besancon attached certified copies of the findings of fact and conclusions of law and the judgment entry in the 2014 Action.

{¶17} In its ruling, the trial court made no specific finding of the absence of a genuine issue of material fact relating to any particular element of the claim of tortious interference with a business relationship. The trial court briefly acknowledged Cedar Lane's contention that the potential for algae research was not specific to the North Field, but then summarily concluded that "all algae research and production took place on the North Field[,]" and, at the time of the alleged interference, Cedar Lane had no rights to the North Field. On this basis alone, the trial court concluded that summary judgment should be granted and Cedar Lane's complaint dismissed.

{¶18} On appeal, Cedar Lane does not dispute the fact that it did not have rights to operate an algae facility on the North Field. Instead, Cedar Lane argues that there was a genuine issue of material fact as to whether it had the ability to enter into a contract with the Arizona Representative on land other than the North Field. Cedar Lane contends that the trial court erroneously concluded that a business relationship with the Arizona Representatives would have necessarily involved the North Field and, therefore, failed to consider whether Cedar Lane could have moved the algae assets and relocated the algae operation to a location other than the North Field, such as the property it leased from Mr. Besancon adjacent to the North Field.

{¶19} As discussed above, in its complaint Cedar Lane unequivocally alleged tortious interference with a business relationship specific to the "Facility." However, it is not clear whether the "Facility" was limited to the North Field site where Touchstone had conducted its

algae production and research operation, or if it included, more broadly, the real property Cedar Lane leased from Mr. Besancon for use in its greenhouse operation as the term is used in paragraph four of the complaint. It is evident that: (1) Cedar Lane did not have the right to enter a business relationship with the Arizona Representatives utilizing the North Field, and (2) the algae facility had been located the North Field. However, because we cannot conclude that the "Facility" was limited to the North Field, these facts alone do not support the conclusion that Cedar Lane could not have located the operation at the Facility if defined in the broader sense. In his summary judgment motion, Mr. Besancon failed to demonstrate the absence of a genuine issue of material fact as to whether the interference with a business relationship necessarily depended upon Cedar Lane having rights in the North Field.

{¶20} We conclude that Mr. Besancon, as the moving party for summary judgment, failed to satisfy his initial burden to show the absence of a question of fact as to an element of the claim of tortious interference. *See Dresher*, 75 Ohio St.3d 292. Accordingly, Mr. Besancon was not entitled to summary judgment and the trial court erred by entering summary judgment and dismissing Cedar Lane's complaint.

{¶21} Cedar Lane's assignment of error is sustained.

III.

{¶22} Cedar Lane's assignment of error is sustained. The judgment of the Wayne County Court of Common Pleas is reversed, and this matter is remanded for further proceedings consistent with this decision.

Judgement reversed
and case remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JULIE A. SCHAFER
FOR THE COURT

CARR, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

J. DOUGLAS DRUSHAL, ERIC T. MICHENER, and ERIC M. GAMMARINO, Attorneys at Law, for Appellant.

BRYAN K. BARNARD, Attorney at law, for Appellee.